Argued September 24; reversed November 10, 1942; rehearing
denied January 19, 1943

## CABELL ET AL. *v.* CITY OF COTTAGE GROVE ET AL.

(130 P. (2d) 1013)

Before KELLY, Chief Justice, and BAILEY, LUSK, RAND, ROSSMAN and BRAND, Associate Justices.

*J. M. Devers,* of Salem (J. W. DeSouza, of Salem, and W. A. Martin, of Milwaukee, Wis., on the brief), for appellants.

*Herbert W. Lombard,* of Cottage Grove, and *Virgil H. Langtry* and *Fred E. Smith,* both of Eugene, for respondents.

LUSK, J. This is a declaratory judgment proceeding in which the State Highway Commission seeks a judicial determination and declaration of the extent of the jurisdiction and control vested in it by the legislature over city streets which constitute a part of the state highway system. The specific question is whether the commission is empowered in the construction, maintenance and operation of a state highway, within the limits of an incorporated city, to construct curbs or other barriers at the edge of the highway at certain street intersections so as to shut off access by vehicular traffic to the highway from the streets so intersected.

Opposing the commission's claim to such authority are the City of Cottage Grove and certain property owners therein, who contend that they have been damaged by the commission's acts. The case comes here on appeal by the commission from a decree of dismissal

following a ruling of the trial court, which sustained a demurrer to the second amended complaint.

The following facts appear: In 1937 the commission undertook to relocate that section of the Pacific Highway which passes through Cottage Grove. Most of the relocated section is over private property, but it also passes over and includes portions of several city streets which it intersects. The highway runs north and south, and on the east side thereof, at three of these intersections, the commission has erected curbs or barricades which prevent access from such streets by vehicular traffic to the highway. It is the opinion and judgment of the commission that an unnecessary traffic hazard will be created if the streets in question are connected with the new highway.

The map, plans and specifications of the proposed improvement, calling for the barricading of these streets in this manner, were submitted to the council of the City of Cottage Grove, which, on April 1, 1940, by resolution, approved and confirmed them and pledged the full cooperation of the city in the accomplishment of the improvement. Subsequently, and after most of the work of construction had been completed at great expense, the city repudiated its pledge and protested against the closing of the streets in question; but the commission, notwithstanding this protest, proceeded to complete the highway, including the barricading of the streets.

The city has threatened to tear out the barricades and challenges the authority of the commission to maintain them, and claims that in that regard its authority is superior to that of the commission.

The complaint contains appropriate allegations showing the existence of a controversy between the plaintiff on the one hand and the defendants on the

other, as to the legal authority of the commission to build and maintain the barricades in question.

As stated, the circuit court sustained the defendants' demurrers. The grounds of the city's demurrer were insufficient facts and want of jurisdiction of the person and of the subject matter of the suit. The latter ground was abandoned by the city. The defendants, property owners, demurred on the ground of want of jurisdiction of the subject matter and insufficiency of the facts stated, and their counsel has urged both points. It is entirely clear that the complaint alleges a justiciable controversy both as to the city and the property owners, and the contention of want of jurisdiction is without merit. The only authority necessary to be cited is the statute (1 O. C. L. A. §§ 6-602, 6-611). This being so, it is also clear that the complaint states facts sufficient to constitute a cause of suit under the declaratory judgment law. ''It is rare that a demurrer is an appropriate pleading for the defendant to file to a petition for a declaratory judgment,'' *City of Cherryvale v. Wilson*, 153 Kan. 505, 510, 112 P. (2d) 111. The test of sufficiency of such a complaint is not whether it shows that the plaintiff is entitled to a declaration of rights in accordance with his theory, but whether he is entitled to a declaration of rights at all. Even though the plaintiff is on the wrong side of the controversy, if he states the existence of a controversy which should be settled by the court under the Declaratory Judgment Law, he has stated a cause of suit. This was pointed out in *Central Oregon Irrigation District v. Deschutes County*, 168 Or. 493, 124 P. (2d) 518, 523, where we held that the complaint stated a justiciable controversy between the parties within the meaning of §§ 6-601 *et seq.*, 1 O. C. L. A., and reversed the decree of the circuit court which had sus-

tained a demurrer to the complaint instead of entering a declaration of rights. See, Anderson, Declaratory Judgments, 271, § 101; *Bruckman v. The Bruckman Co.*, 60 Ohio App. 361, 21 N. E. (2d) 481; *City of Cherryvale v. Wilson*, supra; *Armstrong v. Carman Distributing Co.*, 108 Colo. 223, 115 P. (2d) 386.

■ In the present case the trial judge, in passing on the demurrers, rendered an opinion in writing which sustained the position of the defendants, and entered a decree dismissing the suit. Since the complaint stated a justiciable controversy, the demurrers should have been overruled, and, after the filing of an answer which presumably would have admitted the existence of the controversy alleged, a decree containing a declaration of rights should have been entered. Consequently, it will be necessary to reverse the decree; but, to obviate another appeal, we deem it proper to state our views upon the merits.

The history of highway legislation in this state was reviewed at length in *Cabell v. City of Portland*, 153 Or. 528, 57 P. (2d) 1292. As there stated, "At almost every succeeding session of the legislature after the creation of the commission in 1917, the powers of that body have been enlarged." Originally, the authority to designate, construct and maintain state highways stopped at the limits of incorporated cities and towns. In 1921 this authority was extended to cities and towns of less than 2,000 population (§ 44-2702, Oregon Code 1930), and in 1931 to all incorporated cities and towns (Ch. 88, Oregon Laws 1931). By Ch. 422, Oregon Laws 1935, like authority was granted with respect to cities and towns having a population of less than 100,000. In view of the legislation then in force, applicable to all cities and towns, the reason for this enactment is not clear, and in *Cabell v. City of Portland*, supra,

it was held that it did not repeal Ch. 88, Oregon Laws 1931, and therefore the authority of the commission to construct and maintain a state highway in Portland, a city of more than 100,000 population, was sustained. Section 2 of the 1935 enactment defines the respective jurisdictions of the commission and of cities and towns over streets taken over by the commission as state highways, and is practically identical with 7 O. C. L. A. § 100-124 (a part of the present highway code) hereinafter set out.

In 1939 the legislature enacted a comprehensive highway code, Ch. 529, Oregon Laws 1939, 7 O. C. L. A. §§ 100-101 *et seq.* The purpose of this act is thus stated in § 100-102:

"The principal purpose of this act is to restate, reenact, amend, and in some instances add to, and in some instances omit from the several related and/or independent laws of the state of Oregon which from time to time have been enacted by the legislature with respect to the creation of a highway commission, the construction and maintenance of a state highway system and the duties, authorities and powers of the highway commission concerning construction, operation and maintenance of highways, and concerning other powers and functions of the said commission, to the end that there may be provided a more understandable, more comprehensive and more workable highway code than now exists."

Section 100-114 provides in part:

"The commission shall have full power to carry out the provisions of this act, and said commission hereby is given general supervision and control over all matters pertaining to the selection, establishment, location, construction, improvement, maintenance, operation and administration of state highways, the letting of contracts therefor, the

selection of materials to be used therein, and all other matters and things necessary or proper or deemed necessary or proper for the accomplishment of the general purposes of this act * * *''

Section 100-115 has 36 subdivisions containing specific grants of power, which are stated to be ''in addition to such general powers as may be necessary and incident to the performance of its duties under the provisions of this act''. Among the powers so granted are the following:

Subd. 1. ''Select, establish, designate, construct, maintain, operate and improve or cause to be constructed, maintained, operated and/or improved a system of state highways within the state of Oregon, which highways shall be designated by number and by the point of beginning and the terminus thereof. * * *''

Subd. 13. ''Acquire rights of way necessary or deemed necessary for all state highways, both primary and secondary, and both within and without the corporate limits of cities and towns; provided that rights of way necessary for either primary or secondary highways within the corporate limits of cities and towns may be acquired at the sole expense of the state, or may be acquired at the expense of the city or town, and/or at the expense of the city or town and the state, as may be mutually agreed upon. * * *''

Subd. 25. ''Enter into any and all contracts necessary or deemed necessary for the construction, maintenance, operation, improvement or betterment of highways, or any other contract necessary or deemed necessary for the accomplishment of the purposes of this act, but all contracts executed by the commission shall be made in the name of the state of Oregon, by and through its highway commission * * *''

Subd. 34. ''In all cases where title to real property is acquired by the commission either by donation, agreement or by the exercise of the power of eminent domain a title in fee simple may be taken. * * *''

The following provisions relate to state highways in incorporated cities and towns:

Section 100-122. ''The commission is authorized and directed, whenever the route of any state highway passes through the corporate limits of any incorporated city or town of this state, to select and designate the street or streets of such incorporated city or town over which the said state highway shall be routed, and said commission is further authorized and directed to erect and maintain suitable road signs on and along said street or streets at such places and of such material and design as the commission may select. The commission may alter or change such routing when in its opinion the interests of the motoring public will be better served.''

Section 100-123. ''The commission is authorized and empowered to construct, reconstruct, pave and improve, and is authorized and directed to repair and maintain streets and roads through incorporated cities and towns where such streets and/or roads form a link in the highway system of the state or constitute a connection between two such highways, and which streets and/or roads have been designated by the highway commission as the street, streets or roads over which there is routed state highway traffic; provided, however, that the state highway commission shall have no authority to change or establish any grade of any street or road without the consent of the governing body of such city or town.''

Section 100-124. ''Complete jurisdiction and control of streets taken over by the highway commission as provided in this act shall be vested in the

highway commission and shall extend from curb to curb, or, if there be no regular established curb, then such control shall extend over such portion of the right of way as may be utilized by the highway commission for highway purposes. Responsibility for and jurisdiction over all other portions of such street or road shall remain in the city or town. All cities shall retain the right to grant the privilege to open the surface of any such street or road, but all damage occasioned thereby shall promptly be repaired by the city or town, either itself or at its direction, and the responsibility for the cost thereof shall be upon any such city or town permitting such opening. Cities and towns shall retain the exclusive right to grant franchises over, beneath and upon any such street or road, and to control and regulate such franchises, and the utilization thereof; provided, however, the highway commission shall have the right to utilize any storm sewers thereon or thereunder without cost or charge therefor by the city. Nothing contained in this act shall relieve any public utility from the maintenance and repair of any street or portion thereof or the performance of any other obligation required under any franchise heretofore or hereafter granted to it by any incorporated city or town.''

Neither the present highway code nor any previous legislation contains language expressly conferring authority upon the commission to shut off access to a state highway from a city street. So much the commission concedes. The contention is that the power is necessarily implied from the powers expressly granted.

As we understand the facts, the state has not acquired the fee of those portions of the streets of the city which are included in the highway. The commission's brief contains the statement, ''the fee to the right of way is in the state,'' but we take that to refer

only to that portion of the right of way which was formerly in private ownership. On the argument, counsel for the city, in response to a question from the bench, declared that the state does not own the land in fee (referring to the city streets), and counsel for the commission did not take issue. The complaint suggests nothing to the contrary. It is alleged that the commission "acquired by purchase all of the necessary rights of way * * * where said highway location crossed private property". But, as to the city streets, it is merly said "that a portion of said new route or location occupies in places small areas which were within the boundaries of dedicated streets of the city". It is expressly stated by counsel for the commission that these portions of the streets have not been vacated. We are justified in the conclusion, therefore, that they have not ceased to be city streets, but are city streets "taken over" by the commission in the exercise of the authority "to select and designate the street or streets of such incorporated city or town over which the said state highway shall be routed," § 100-122.

As we know judicially, there are many miles of streets in the various cities of the state which have been so designated, and it is difficult for us to conceive of a legislative intention to strip these thoroughfares of their character as city streets, though that is undoubtedly the result which would follow if the commission's claim of power should be sustained.

We think that such an intention should not be inferred, and that not only is it not expressed, but its existence is refuted by the language employed. In § 100-122, for example, after authorizing the commission "to select and designate the street or streets of such incorporated city or town over which the said state highway shall be routed," the commission is au-

thorized and directed "to erect and maintain suitable road signs on and along *said street or streets,*" thus clearly indicating that the route so selected would continue to be a city street. It is further provided in that section: "The commission may alter or change such routing when in its opinion the interests of the motoring public will be better served." It would seem to be a strange result if a street designated by the commission under this authority should cease to be a street while the state highway is routed over it, and, when the commission decides to change the routing, that it should revert to its original character. The provision of § 100-123, forbidding the commission to change the grade of a street without the consent of the city, also strongly suggests that it was not in the mind of the legislature to destroy city streets taken over by the commission.

The view we take is in harmony with that expressed by the Missouri court in construing similar legislation. Under the statutes of Missouri a state highway commission is created with powers comparable to those vested in the Oregon commission. Mo. St. Ann., Ch. 42, Art. 12. The Missouri commission is given power to construct state highways through municipalities under certain circumstances: *ibid.*, § 8133, and by § 8134 it is provided that "the state highways as herein designated shall be under the jurisdiction and control of the commission". These provisions were construed in *State of Missouri v. Missouri Utilities Co.*, 339 Mo. 385, 96 S. W. (2d) 607, 106 A. L. R. 1169. The case was an information filed by the attorney general seeking to oust a public utility corporation from the use of the streets, alleys and public places of the city for the maintenance of the corporation's electric light and power lines and equipment. One contention of the cor-

poration was that, since two of the streets on which its poles and lines were located were designated as a part of the state highway, the highway department alone had jurisdiction over them and the poles could be removed only on order of the commission. The court, after referring to § 8109, R. S. Mo. 1929, which defines the powers of the highway commission relative to the location of the wires, poles, etc., of telegraph and other public utility corporations within the right of way of a state highway, said:

"It was, however, clearly, not the intention of the Legislature to vest the commission with jurisdiction over these portions of city streets, so designated as parts of state highways, superior to the jurisdiction of the municipal authorities. Certainly the city's police power as to such streets remains unaffected. Orders under section 8109 are limited to those necessary to prevent interference with traffic on the highways and with highway construction. In matters immediately concerned with the construction of paving of the highways and their maintenance, the commission has jurisdiction. But in other matters the city's power continues. This asserted defense therefore cannot avail respondent."

In an early case this court held that a statute transferring jurisdiction over county highways passing through a municipal corporation from the county court to the city did not convert such highways into city streets. *Heiple v. The City of East Portland*, 13 Or. 97, 8 P. 907. At p. 105 of the official report it is said:

"A transfer of jurisdiction from one tribunal to another does not necessarily affect the nature or character of the thing upon which such jurisdiction is to act; and if such is the object, especially in cases of this character, where important consequences are claimed to follow it, the legislative intent ought to

be so expressly declared. To hold, therefore, that the effect of the act (section 34) was to convert these highways into streets, with the attendant consequences claimed, the legislative intent ought to be clear, and grounded in something more than mere inference.''

■ In our opinion city streets continue to be such, even though designated by the highway commission as streets over which a state highway shall be routed.

■ The argument, on behalf of the commission, is that the legislature has paramount control over all the public highways of the state, including city streets and county roads; that the legislature may exercise that control or may delegate it and may recall a power once delegated; that the legislature has recalled from cities the control over city streets taken over by the commission pursuant to the provisions of the highway code and vested that control in the commission; and that such control includes the authority now in question. The power and authority of the legislature thus asserted, to delegate and recall control over public highways, are not and cannot be disputed. See, *Cabell v. City of Portland,* 153 Or. 528, 538, 57 P. (2d) 1292; *Brand v. Multnomah County,* 38 Or. 79, 91, 60 P. 390, 62 P. 209, 84 Am. St. Rep. 772, 50 L. R. A. 389; *Dent v. Oregon City,* 106 Or. 122, 126, 211 P. 909.

As to city streets taken over by the commission as part of a state highway the legislature has vested in that body ''complete control and jurisdiction'' which extends ''from curb to curb, or, if there be no regular established curb, then such control shall extend over such portion of the right of way as may be utilized by the highway commission for highway purposes'' (§ 100-124). From this grant of jurisdiction and control, and the power to ''select, establish, designate, construct,

maintain, operate and improve \* \* \* a system of state highways within the state of Oregon'' (§ 100-115), and the grant of ''general supervision and control over all matters pertaining to the selection, establishment, location, construction, improvement, maintenance, operation and administration of state highways, the letting of contracts therefor, the selection of materials to be used therein, and all other matters and things necessary or proper or deemed necessary or proper for the accomplishment of the purposes of this act'' (§ 100-114), the authority to exercise the power here in dispute is deduced. It is said to be the power to control traffic, necessarily implied from the powers expressly granted, and we are told in the commission's brief that:

> ''Evolution in the transportation systems of the country involving the movement of property and persons over modern highways financed not by property tax but by a user tax over highways constructed and maintained by the states and the Federal Government removes this controversy beyond a rigid application of the principles of law applicable to early highways which were constructed and maintained by abutting property owners and by a general property tax.''

■ The question is an important one and should be approached by the court in no provincial spirit, but in the light of the exigencies of modern high speed transportation methods and of the far-reaching scope of the activities of the highway commission. It may be conceded that it would be desirable and in the public interest were the commission to be vested with the authority which it claims, and we join in the tribute which counsel for the commission has paid to the prudence, honesty and efficiency with which state highway affairs

have been administered, unselfishly and without compensation, by the members of that body. But we are not told by the commission's able counsel what principles, either of substantive law or statutory interpretation, are to be relaxed in their application to this question. The court still has only the limited function of construing the statute, not of conferring authority; we are dealing with a commission of purely delegated powers, and, regardless of what we might think the law should be, our sole duty is to determine from an examination of the statute the extent of the powers which the legislature has vested in one of its own creatures.

■ The rule by which the court must be guided was thus clearly stated by Mr. Justice RAND in *Barrett v. Union Bridge Company,* 117 Or. 566, 570, 245 P. 308, 45 A. L. R. 527:

"Section 715, Or. L., (1 O. C. L. A. § 2-216) directs that the courts in the construction of statutes, are 'simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, nor to omit what has been inserted'. We ought never to import into a statute words which are not to be found there, unless from a careful consideration of the entire statute it be ascertained that to import such words is necessary to give effect to the obvious and plain intention and meaning of the legislature. Under the directions of the statute last referred to, we are not at liberty to give effect to any supposed intention or meaning in the legislature, unless the words to be imported into the statute are, in substance at least, contained in it."

■■ We are not, however, limited to the mere words of the statute. Powers may be implied as reasonably and necessarily incident to those expressly granted, and

the question must be examined in the light of the principle that "where the legislature gives power to a public body to do anything of a public character, the legislature means also, to give to the public body, all rights, without which the power would become wholly unavailable, although such a meaning cannot be implied in relation to circumstances arising accidentally only". Beal's Cardinal Rules of Leg. Interp. (3d Ed.) by Randall, p. 439, quoted in *Barrett v. Union Bridge Company*, supra.

The cited case itself furnishes a good illustration of the application of the principle. The court there held that the authority of the State Highway Commission to construct a bridge across a river, which was a boundary between two counties, and to build an approach to the bridge within the corporate limits of an incorporated city was necessarily implied, notwithstanding it was not expressly granted, because the main purpose of the highway legislation, namely, to create within the state a system of public highways, could not be accomplished without the exercise by the commission of such power.

In the instant case counsel differ as to the precise nature of the issue presented. The plaintiff says:

"The real issue is: 'To what extent, if at all, must the authority and jurisdiction of the State Highway Commission with respect to the construction of a state highway within the corporate boundaries of a city yield to the authority and jurisdiction of the municipal authorities of that city?' "

The city asserts that the issue is "whether the legislature has, under any statute, conferred upon the appellants the authority to close and barricade a street or road leading into a state highway". But in what-

ever way the issue may be stated, it is clear that the effect of the commission's act is to close to public travel from the east to west those portions of the city streets taken over by it and to that extent to put an end to their existence as thoroughfares. If it be true, as the commission asserts, that the legislature has recalled from the City of Cottage Grove and delegated to the commission the control heretofore delegated to the city over those portions of its streets which have been taken over by the commission as a part of the state highway system, then it follows that the asserted power has not been granted to the commission, because the city itself has never had that power.

■ "The fundamental idea of a street is not only that it is public, but public for all purposes of free and unobstructed passage, which is its first and primary, but by no means sole, use." 3 Dillon, Municipal Corporations (5th Ed.) 1849, § 1163.

■ The legislature, by virtue of its paramount and plenary authority, may close a street or may delegate such power to a city, though that power may not be constitutionally exercised without making compensation to property owners who suffer special injury as a result. *Bostwick v. Hosier*, 97 Or. 125, 190 P. 299; *Sandstrom v. Oregon-Washington Railway and Navigation Co.*, 75 Or. 159, 146 P. 803; *Willamette Iron Works v. Oregon Railway and Navigation Co.*, 26 Or. 224, 37 P. 1016, 46 Am. St. Rep. 620, 29 L. R. A. 88; 1 Elliott, Roads and Streets (3d Ed.) 31, § 26.

■ A municipality, however, has no such power unless it has been delegated to it by the legislature, expressly or by necessary implication. As stated in 25 Am. Jur., Highways, 549, § 255, grants of authority to a municipality to declare the general policy in regard to

the control of streets "are ordinarily strictly construed in the interest of the common right". In the same text, p. 569, § 276, it is said:

"Subject to constitutional limitations upon the invasion of property rights, the legislature may authorize obstructions in streets or other highways which would otherwise be nuisances, and may temporarily withdraw any highway from the general public use and devote it for the time being to a public use of a special character. As a rule, any obstruction or structure which is authorized by a statute enacted within the scope of legislative power cannot be a nuisance, but statutes authorizing such obstructions are strictly construed. Legislative power to authorize obstructions may be delegated to municipal or quasi-municipal corporations. But in the absence of such legislative authorization, either express or by necessary implication, or of a constitutional provision conferring home-rule powers in this respect, the general rule is that a municipality has no right to authorize any obstruction or encroachment which would interfere with the enjoyment of the public right; and it is immaterial, so far as this rule is concerned, that the municipality may be the owner of the fee, or that the use in question may be a public one * * * "

Again, in discussing the power of a municipal corporation to grant franchises, it is said in 38 Am. Jur., Municipal Corporations, 210, § 526:

"In any event, municipal corporations have no power, under general provisions or other such grants of power, to grant franchises which will result in destroying the usefulness of public property or property in their trust which is used for public purposes and for public welfare or convenience. It has been said, in this connection, that in granting street franchises a municipal corporation acts as a trustee for the public."

See, *City of St. Paul v. Chicago, Milwaukee & St. Paul Railway Co.,* 63 Minn. 330, 65 N. W. 649, 34 L. R. A. 184; *Reed v. City of Seattle,* 124 Wash. 185, 213 P. 923, 29 A. L. R. 446. In the former case it was said by Mitchell, J.:

> "It is also well settled that a grant of power to a city to grant any privileges or rights in streets or other public grounds is to be strictly construed, and not enlarged by construction; and, if there is a fair or reasonable doubt as to the existence of its power, it will be resolved against the municipality."

■ The municipal corporation of Cottage Grove was created by legislative enactment. Under its charter the council is "authorized and empowered to lay out, establish, vacate, widen, extend and open streets and alleys in said city * * *" (§ 1, Ch. VI) and "to remove and abate any nuisance, obstruction, or encroachment upon the streets, alleys, public grounds and highways, or any other place within the limits of said city" (Subd. 23, § 7, Ch. IV). But neither in the charter nor in any statute to which we have been referred, or of which we are aware, is the power found to barricade a street and close it to public travel. (The city, of course, may vacate a street, but there has been no vacation.) If, therefore, the commission's case depends upon the validity of the proposition that a power once vested in the city has been recalled by the legislature and delegated to the commission, the case is without any foundation upon which to rest.

■ But the legislature has not, in fact, vested in the commission all the control formerly in the city over streets which become a part of the state highway system. Section 100-124, which grants to the commission

jurisdiction and control over such streets, also provides:

" * * * Cities and towns shall retain the exclusive right to grant franchises over, beneath and upon any such street or road, and to control and regulate such franchises, and the utilization thereof * * * Nothing contained in this act shall relieve any public utility from the maintenance and repair of any street or portion thereof or the performance of any other obligation required under any franchise heretofore or hereafter granted to it by an incorporated city or town."

The reservation of this right in the city is wholly inconsistent, in our opinion, with the existence of the asserted power in the commission. Under its charter and by virtue of its general power to regulate the use of its streets, the city may, for example, permit the use of the surface of any of its streets by a common carrier operating motor busses (*Savage v. City of Salem*, 23 Or. 381, 31 P. 832, 24 L. R. A. 787, 37 Am. St. Rep. 688; 38 Am. Jur., Municipal Corporations, 210, § 526); and that right is expressly reserved to it in § 100-124 with respect to streets taken over by the commission. If the commission's construction of its powers were to be sustained it could stop the operation at the highway, and the expressed legislative intent would be set at naught. If a route for a state highway designated by the commission passed over a street where such a franchise was already enjoyed, the commission, by barricading the highway, could destroy the franchise notwithstanding the clear implication of the last sentence of the section against the right to exercise any such authority or to accomplish any such result.

As has been stated, the commission contends that the disputed power is the power to control traffic, which it has seen fit to exercise in this instance, after determining that to permit the entry of traffic to the new highway at the barricaded intersections would create an unnecessary hazard.

The motor vehicle has given rise to a great body of traffic control legislation in this state, consisting, for the most part, of general regulations governing speed, right of way, equipment, etc. In a number of particulars, however, specific grants of authority in the nature of traffic control have been made to the State Highway Commission, as well as to local authorities. By § 115-351 the commission is "authorized to designate main traveled or through highways by placing at the entrance thereto from intersecting highways signs or markers notifying drivers of vehicles to stop before entering or crossing such designated highways" or to "designate particular intersections and to place such signs or markers at one or more entrances thereto"; and it is made unlawful for the driver of any vehicle to fail to stop in obedience to such signs. This statute was enacted in 1931 and was amended in 1941 in a particular not pertinent to the present discussion (Or. Laws 1941, Ch. 428, § 10, p. 741). Since 1931 the commission has possessed similar authority with reference "to particularly dangerous grade crossings of steam or interurban railways by highways" (§ 115-349); and since that time it has been authorized "to determine the character or type of and to place and erect upon state highways traffic control signals at places where the commission shall deem necessary for the safe and expeditious control of traffic" (§ 115-309); to determine the maximum speed which can with safety to the structure be maintained

by any vehicle on any public bridge, causeway, or viaduct, and the speed so determined then becomes the lawful speed (§ 115-324); at its discretion to issue permits for the movement over the highways of vehicles, the movement of which is otherwise prohibited on account of their weight, size or description (§ 115-393 and Ch. 55, Or. Laws 1941); and, in order to prevent undue damage to the highways, to close a highway or any section thereof to certain types of vehicles or to all vehicles (with the exception of those moving the products of the soil) for such period or periods of time as in its judgment will be for the best interest of the state.

In 1941 the legislative assembly, after prescribing certain so-called designated speeds to be observed by drivers of vehicles upon the highways, provided:

"Whenever the state highway commission shall determine upon the basis of an engineering and traffic investigation that any designated speed hereinbefore set forth is greater or less than is reasonable or safe under the conditions found to exist upon any state highway, or section thereof, not within the corporate limits of any city, said commission may designate a different speed thereupon, which shall be effective when appropriate signs giving notice thereof are erected upon such state highway, or section thereof." Or. Laws 1941, Ch. 458, p. 816.

This act further provides for the creation of a board to be known as the State Speed Control Board and to consist of the secretary of state, the superintendent of the Department of State Police, and the chairman of the State Highway Commission, or their duly designated representatives, to fix, under certain circumstances, greater or less speeds than the desig-

nated speeds applicable to county roads or city streets. It will be observed that the authority of the commission to change the designated speeds is limited to state highways not within the corporate limits of any city.

The statutes of this state governing the operation of automobiles and other vehicles on the highways, such, for example, as that dealing with the right of way of drivers of vehicles at intersections (§ 115-337) contemplate the free flow of traffic and the unobstructed use of the highways by the traveling public, subject, of course, to the regulations imposed. Limitations on such use are established by express provisions, such as the safety zone statute (§ 115-347) and the power granted to local authorities to prohibit other than one way traffic on certain streets (§ 115-307). The only authority of that kind expressly conferred upon the highway commission is found in the statutes to which we have referred.

■ From a consideration of these enactments it is a reasonable, if not conclusive, inference that the jurisdiction and control over city streets vested in the commission was not intended by the legislature to embrace the power to impose traffic regulations. The legislature has granted to the commission regulatory authority of that character in certain specific instances, and by so doing has evinced its intention not to grant such authority generally, or in respect of any particular measure of traffic control not expressly mentioned in the statute. The commission may, pursuant to the express provisions of the statute require vehicular traffic to come to a stop before entering a main traveled or through highway; or it may regulate the movement of vehicles at an intersection of highways through the use of traffic control signals; or it may exercise the authority granted to it in the other statutes to which

we have called attention. But it has not been given the much greater power to abolish altogether a portion of the traffic at an intersection of a state highway with a city street.

■ *Expressio unius est exclusio alterius* is a general rule of construction of statutes, *Kruckman v. Smith,* 126 Or. 395, 398, 270 P. 474; *Scott v. Ford,* 52 Or. 288, 296, 97 P. 99. It is to be applied with caution and merely as an auxiliary rule to determine the legislative intention. Beal's Cardinal Rules of Leg. Interp. (3d Ed.) by Randall, 353; Crawford, Statutory Construction, 337, § 195; Endlich, Interpretation of Statutes, 558, § 398, 559, § 399. But here we have a comprehensive highway code containing many specific grants of power to the State Highway Commission. We also have numerous provisions not found in the highway code conferring authority upon the commission to regulate traffic in certain definite particulars and by certain specified methods. In all this legislation there is nothing to make applicable the language found in *Lowe v. Dorling & Son,* (1906) 2 K. B. 772, 785:

"The failure to make the 'expressio' complete very often arises from accident, very often from the fact that it never struck the draftsman that the thing supposed to be excluded needed specific mention of any kind."

■ On the contrary, the highway code is drawn with meticulous care and with the evident purpose to define the powers of the commission with precision and particularity; and, when adopting it, the legislature must be presumed to have been aware of provisions elsewhere found in the statutes granting to the commission a measure of authority to control traffic in order to promote the safety of travelers upon the state highways. Is it not, therefore, reasonable to suppose that

if any further authority of that kind was intended to be bestowed, the law-makers would have manifested that intention in express language and not have left it to be inferred or implied from general words such as "jurisdiction," "control," "administration," "operation" and "maintenance"? Not only do we think that this is true, but we are also of the opinion that it is very much to be doubted that the power claimed by the commission would have been conferred without some definition of the circumstances and conditions which should attend its exercise, and, in all probability, without making provision for compensation of property owners who might be specially injured as a result of its exercise; for, as we have seen, it is a great and extraordinary power and one which might readily be abused.

■■ The words of the statute which we have just quoted (with the exception of "jurisdiction" when used in connection with judicial tribunals) have no settled legal or technical signification. Their meaning, as used in the statute, must be ascertained from the connection in which they are used, the act in which they are found, and the legislation of which they form a part. *Gulf Refining Co. v. Fox*, 11 Fed. Supp. 425, 430; *City of Bridgeton v. Zellers*, 100 N. J. L. 33, 124 Atl. 520, 521. The 1939 highway code deals mainly with the "construction and maintenance of a state highway system and the duties, authorities and powers of the highway commission concerning construction, operation and maintenance of highways," § 100-102. It does not deal with or mention traffic control. It is, of course, to be assumed that it is the duty of the commission, in constructing and maintaining highways, to have regard to the safety of the traveling public. But that is a different thing from implying an extraordinary power to

shut off access to a highway from established city streets, even though it be the judgment of the commission that the public safety would thereby be promoted. These powers, then, of "maintenance, operation and administration" of highways are, as the court said in *City of Bridgeton v. Zellers,* supra, "associated with construction and maintenance of the roadway" and evince no intent to grant the power of traffic regulation. The "complete jurisdiction and control" over city streets taken over by the commission relate likewise to construction and maintenance of the roadway, and the grant of power serves to transfer such jurisdiction and control from the city to the Highway Commission, and, further, enables the commission to exercise upon city streets so taken over the specific regulatory powers with regard to traffic vested in the commission by other provisions. Beyond this the statute, in our opinion, does not go. *State of Missouri v. Missouri Utilities Co.,* supra.

 It is our conclusion, therefore, that the power which the commission claims is not only not necessary to be implied in order to enable the commission to exercise the powers which the legislature has expressly granted it; but, that the existence of this power is negatived by numerous statutory provisions to which we have referred, while its judicial vindication would accomplish the virtual repeal of others. It would be an extreme and unwarranted application of the doctrine of implied powers to hold that the commission is unable to carry out its statutory duties without closing city streets over which state highways pass. The commission is authorized and it is its duty, no doubt, to build and maintain highways suited to the needs of the automobile traffic of our day. There must be speed with safety. But, obviously, the former will at some times

and places be sacrificed in favor of the latter. The legislature has given the commission, in express terms, the means of controlling traffic and minimizing the hazards at dangerous intersections; it has not told the commission that it may abolish a part of such traffic.

It should be added that the streets of the city of Cottage Grove which have been barricaded terminate at the Southern Pacific Railway track about 400 feet west of the new highway, and that travelers on these streets approaching the highway from the east can gain access to it by detouring very short distances. Thus, it is probable that the commission's action in this instance would cause a minimum of inconvenience to owners of abutting property and the travelling public. But this circumstance, as counsel for the commission conceded on the argument, sheds no light on the question whether the commission has the power it has assumed to exercise, since if it does have such power it can exercise it in any city of the state and as to any street where, in the judgment of the commission, access to a state highway should be denied for reasons of safety, and regardless of the extent of inconvenience to the travelling public or of damage to abutting property owners.

■ It remains only to say that since, as we have seen, it is beyond the powers of the City of Cottage Grove to close any of its streets, it is equally beyond its powers to authorize another to do so; and, consequently, the city is not estopped by its consent to the improvement and its subsequent repudiation of that consent to object to the commission's unauthorized acts. See, *Tuttle v. Beem,* 144 Or. 145, 157, 24 P. (2d) 12. No contention to the contrary has been made by counsel for the commission.

As hereinabove indicated, the opinion of the circuit judge filed in the case is in harmony with the foregoing views; but, for the error in sustaining the demurrers and dismissing the suit, it will be necessary to reverse the decree and remand the cause for further proceedings. It is so ordered.

---

BRAND, J. (dissenting). I agree that the decree should be reversed and remanded for a declaration of rights, but I dissent from the conclusion of the majority that the state has exceeded its power by constructing curbs which constitute an obstruction of access to the state highway from the city streets in question.

The opinion of the court contains a characteristically fair statement of the issues involved, but a brief outline of the perplexing problem is appropriate. The Pacific Highway, an interstate thoroughfare, has been routed through the city of Cottage Grove and in the vicinity with which we are concerned constitutes a four-lane arterial way. In that vicinity the highway was located and established by the commission over land acquired by it through the expenditure of state and federal, not local, funds. The state highway does not run along any street. It runs along its own right of way which never was a city street of Cottage Grove. At three points, which are in issue here, it runs across what is or was a city street. The commission has constructed curbs on the border and within the boundaries of the state highway, which curbs are not broken to permit access to the state highway from the ends of the three city streets in question. No such obstruction exists as to the other streets which enter the highway. The issue relates only to the power of the

state over that area which was within the three streets and over which the state highway now runs. The problem is identical in each of the three locations. The result of the obstruction is that persons who, prior to the construction of the state highway, could drive their vehicles along the city street for the full length thereof cannot now drive into or across the state highway from those particular streets. The city contends that the state highway commission, by constructing a continuous curb along the edge but within its rights of way, has "closed a street". It contends further that the commission has not been authorized by statute to "close" city streets and that the city has the charter power to prevent and remove the curbing as an obstruction to a city street.

This is a controversy between two instrumentalities of the state, the one general and the other local, the one a state commission having jurisdiction over state highways which form through arteries, of state, national and international importance, the other a municipality having local powers and duties only, relative to city streets under charter provisions.

In the absence of express legislative grant of authority to a city, its powers are limited to matters of local, as contrasted with general, affairs, and even as to its control of its streets, local in nature and use, the city must yield to statutes of general statewide scope. See *Cole v. City of Seaside*, 80 Or. 73, 156 P. 569 (1916); *In re application of Boalt*, 123 Or. 1, 260 P. 1004 (1927); *Rose v. Port of Portland*, 82 Or. 541, 162 P. 498 (1917); *City of Woodburn v. Public Service Commission*, 82 Or. 114, 161 P. 391 (1916); *Twohy Bros. Co. v. Ochoco Irrigation District*, 108 Or. 1, 210 P. 873, 216 P. 189. The type of construction and operation of arterial ways and the location of facilities for access to them, all directly

affect the safety of the general travelling public and present problems which are primarily of general and not local importance.

If there be uncertainty in the meaning of a statute involving the allocation of power between the state-wide authority and the local authority, and if the subject matter of the statute is a state highway, then I think it clear that reasonable doubts should be resolved in favor of the state-wide authority.

A public way which is under the control of municipal authorities and which primarily serves only local purposes, is a street, and a public way established by the state for state-wide through traffic and under the control of the state commission is a state highway. The same physical space cannot be at the same time both a city street and a state highway. 4 McQuillin Municipal Corporations, 2nd Ed., § 1387. The distinction between the two is found in the character of its use and the nature of the jurisdiction over it. *Heiple v. City of East Portland*, 13 Or. 97, at 104, 8 P. 907; *Cole v. City of Seaside*, 80 Or. 73, 156 P. 569. When the state highway was established, it ran athwart what had been a small cross section of a city street, but when so established the entire area within the exterior boundaries of the state highway immediately became subject to the complete jurisdiction and control of the State Highway Commission. I think that that cross section of what had been city street ceased to be such and became for all purposes a part of the state highway. When the city street reached the boundary of the new state highway, it ceased to be a street. It was not "closed"; as a "street" it was ended, not by a curb but by a legally established state highway. To be sure, what had been a street was still a public thoroughfare, but its character was changed, and jurisdiction and con-

trol became vested in the State Highway Commission with authority to "construct, maintain, operate and improve" to as full extent respecting this portion of the highway as existed with respect to the other portions, except in so far as the legislature expressly reserved to the municipality some rights respecting the area in question.

The statute provides:

"The commission shall have full power to carry out the provisions of this act * * * is given general supervision and control over all matters pertaining to * * * location, construction, improvement, * * * operation and administration of state highways * * * and all other matters and things necessary or proper or deemed necessary or proper * * *." O. C. L. A. 100-114.

"In addition to such general powers as may be necessary and incident to the performance of its duties under the provisions of this act the commission hereby is given specific power and authority to do and accomplish the following things:

"(1) Select, establish, designate, *construct, maintain, operate and improve* or cause to be constructed, maintained, operated and/or improved a system of state highways * * *." O. C. L. A. 100-115. (Italics mine.)

"Complete jurisdiction and control of streets taken over by the highway commission as provided in this act shall be vested in the highway commission and shall extend from curb to curb, or, if there be no regular established curb, then such control shall extend over such portion of the right of way as may be utilized by the highway commission for highway purposes. Responsibility for and jurisdiction over all other portions of such street or road shall remain in the city or town." O. C. L. A. 100-124.

The curbs in question which obstruct access to the highway are built within the limits of the state highway

over which complete jurisdiction and control was vested in the commission. They are on a portion of the "right of way * * * utilized * * * for highway purposes". They are not, then, erected in city streets. They do not close a city street; they mark its end. The provision that "responsibility for and jurisdiction *over all other portions* of such street * * * shall remain in the city * * *" (italics ours) implies that the city has no responsibility for or jurisdiction over those portions of city streets "taken over" by the commission. How, then, can they justify their threat to tear out the curbs within the boundary of the highway on the purported authority of a local charter?

Narrowly stated the problem is this: Where a city street runs at approximately right angles to a state highway and its end abuts upon a state highway, can the commission obstruct direct access to the highway by a curb built thereon? The real problem is broader than this, and assuming that the state highway is laid out athwart a city street, the problem is not merely whether the state commission has power to lay a curb in the lateral margin of the highway. The consequences of a ruling against the highway commission are more far-reaching. If the highway cannot obstruct access from the street to the highway, then, by the same token, it cannot construct a divided highway, with parking, curb or other obstruction running longitudinally along the center of the state highway at any point where the state highway crosses what was once a city street. If the city can insist that the cross section of the street over which the state highway runs is still a city street, and that direct access cannot be obstructed by a curb on the margin of the state highway, then the city can also, by the same reasoning, insist that free access be maintained clear across the highway and can insist upon the

removal of any obstruction along the center of the state highway which may in many instances separate, for the purposes of safety, traffic going in opposite directions.

The city claims power under a local charter to summarily remove a structure from a state highway over which complete jurisdiction and control is vested in the State Highway Commission, because it constitutes an obstruction to what was formerly a local city street. That structure (a curb) is a well-recognized part of ordinary highway specifications and construction. The commission is authorized to make specifications and to construct and operate. I am not asserting a power in the commission to regulate traffic after the manner of a super traffic officer. What I do assert is the granted power to construct highways, which includes the incidental construction of curbs, divided highways and the like.

I think we should conclude that the statutes quoted do include the power to construct curbing within and along the margin of state highways and at the points in question here. Any obstruction placed outside of the boundaries of the state highway should, of course, be removed.

There is in this case no issue involving abuse of administrative (or delegated legislative) power by the highway commission. Any such abuse by the arbitrary exercise of delegated power would, of course, be stricken down. In this instance, wherever access to the highway from the end of the street has been obstructed by a curb, there has also been provided ample access to the highway on streets parallel to the one subject to the obstruction and only one block distant. No traveller from any point could be subjected to more than the slight inconvenience of travelling less than one-half of

the way around a city block in order to gain access to the state highway. In the exercise of jurisdiction and control over state highways there is imposed upon the highway commission the duty of so constructing arterial ways as to avoid, so far as reasonably possible, the construction or existence of traffic hazards. In this respect the problem affecting state highways is different from that which exists upon city streets. The complaint alleges and the demurrer admits that the highway here carries a daily volume of traffic of 2,160 cars and that the commission is of the opinion that unnecessary hazard to traffic will be created if access to the highway is permitted at the points in question.

Some reliance, and with reason, is placed by the majority upon the provisions of the portion of the statute which provide:

"* * * All cities shall retain the right to grant the privilege to open the surface of any such street or road, but all damage occasioned thereby shall promptly be repaired by the city or town, either itself or at its direction, and the responsibility for the cost thereof shall be upon any such city or town permitting such opening. Cities and towns shall retain the exclusive right to grant franchises over, beneath and upon any such street or road, and to control and regulate such franchises, and the utilization thereof." O. C. L. A. 100-124.

I do not think these provisions are conclusive. If, aside from the franchise provision last above quoted, the general language of the statute which grants jurisdiction and control to the highway commission, does in fact authorize the obstruction of access by a curb, and if that authority appears to conflict with the authority to grant franchises which is vested in the city, then we should seek a construction which would harmonize the two grants. In that event, it would seem that the power

and authority of the highway commission would be paramount and that of the city in the exercise of its rights to grant franchises would be subordinate.

"Municipal control and regulation of streets must harmonize with the laws and policy of the state. This is so because all public highways are under the paramount control of the state. 'All power of lesser municipalities over such streets is simply delegated power from the state whether exercised by the county, the city, or the town. It follows therefore that no municipality has power to make any law affecting public highways or their use which contravenes the policy of the state touching such control and use' * * *." McQuillin Municipal Corporations, 2nd Ed., p. 68 § 1415.

I suppose that the legislature contemplated chiefly, if not exclusively, that franchises might be granted by the city along rather than across the state highway, in which case there would be no interference between the powers of the highway commission and those of the city. Nor does the reservation to the city of the right to open the surface of the highway conflict with the power of the commission. An opening if made even for the purpose of crossing the highway would not conflict, for such opening, if made by the city, must be promptly repaired by it. The only conflict with the power which I think has been vested in the commission would arise if the city attempted to grant a franchise to a bus line or car line or an overhead power line to operate from the city street into or across the highway within the former lines of the street. If that were attempted, a real conflict would arise by reason of the fact that the state had barred access on the margin or perhaps along the center of the arterial way. In the event of such a remote contingency and conflict, I should say that the statutory right of the local instrumentality to grant

such a franchise would have to yield to the power of the State Highway Commission to construct a highway, including the power to build curbs or establish divided highways in the paramount interest of the travelling public. In the case at bar the only limitation upon the power vested in the city to grant franchises would be to require that a bus or street-car line to which a franchise might be given, should enter the state highway at a point one block distant rather than at the point where access has been obstructed by the construction of the state highway. Such a construction of the statute would, I think, remove the ambiguity which is apparent in the grant of possibly conflicting powers to different instrumentalities of the state. It would also prevent the possibility of multitudinous interferences by local municipal bodies with the proper and safe construction of highways by the state commission.

We may judicially know that if vehicles are given access to an arterial way at the end of every city block in every small city, the free flow of through traffic will be impeded, and the traffic hazard increased. I think the power to deal effectively with such hazard has been granted to the highway commission and that it may, within reasonable limits, control vehicular access to the highway through its power to control the type of construction thereon. Neither the record of the State Highway Commission of Oregon nor any principle of law justifies us in the expectation or fear that this power will be abused.

We are not here dealing with the rights of any abutting property holders. If they have been deprived of any property right by the action of the commission, the constitution gives them redress.

It may be suggested that the case of *Heiple v. City of East Portland* (supra) is inconsistent with my con-

clusions. In that case the plaintiff was an abutting property owner who had been assessed by the city for the improvement of a highway. His contention was that the highway was a county road and not a city street and that therefore the city had no power to assess his property for improvement thereof. The highway in question was originally a county road. Thereafter the city was incorporated, the land in question included within its limits, and by a subsequent act, authority was conferred upon the city to control the public highway within its territory, and the highway was excepted from jurisdiction of the county court of Multnomah county. The city contended that it thereby acquired the right to make assessments for benefits against the abutting property. The supreme court on appeal held that the city had no such right and that the legislative action had not transformed the county road into a city street for such purposes.

The first distinction is to be found in the fact that the Heiple case was a controversy by a private property holder against the city. It was not a controversy between two governmental agencies, the one general and the other local. It may well be that, as between an abutting property holder and the city, on inquiry as to the validity of a street assessment a public way would be deemed to be a county road, because the right to assess for benefits had never been granted to the city, whereas in a controversy between the highway commission and a city the way might well be deemed to be a state highway for purposes of improvement, especially where the city had lost all power to make future assessments for benefits.

Furthermore, it appears from the opinion in the Heiple case that the controlling consideration which

led the court to hold that the thoroughfare had not become a city street for the improvement of which assessments could be made, was to be found in the fact that the original county road imposed upon the abutting property holders no burden of liability for assessments and granted to no governmental body the power to make assessments for benefits. The court pointed out that the statute which conferred control of the public highway upon the city should not be construed to subject abutting property to new and additional burdens, namely, the liability to assessment.

In the case at bar the situation is reversed. Property of abutting owners which was presumably subject to assessment by the city is relieved of the burden of liability to assessments when the State Highway Commission takes over a portion of the city street and assumes complete jurisdiction and control thereof. I think no one would contend that any assessment for benefits could be levied against abutting property on account of any improvement of the thoroughfare after the "street" had been "taken over" as a state highway. The city undoubtedly has charter power to assess the cost of improvements on city streets against abutting property. The loss of this power as to the portion of thoroughfare in question, I think argues that the portion in question should no longer be deemed a street.

Somewhat similar distinctions might be made concerning the case of *State of Missouri v. Missouri Utilities Co.*, 339 Mo. 385, 96 SW (2d) 607, 106 ALR 1169, cited by the majority. That case, although not involving the rights of abutting property holders, did involve property rights of a light and power corporation in the public thoroughfare.

Mr. Justice RAND concurs in the foregoing dissent.