Argued September 27, reversed and remanded with instructions November 15, reconsideration denied December 15, 1976, petition for review denied January 25, 1977

HARRISON et ux, *Appellants,*

*v.*

PORT OF CASCADE LOCKS et al, *Respondents.*

(No. 7364, CA 6069)

556 P2d 160

*Barbee B. Lyon,* Portland, argued the cause and filed the briefs for appellants.

*David P. Templeton,* Portland, argued the cause for respondents. With him on the brief was Martin, Bischoff, Templeton & Biggs, Portland.

Before Schwab, Chief Judge, and Fort and Thornton, Judges.

THORNTON, J.

## THORNTON, J.

■■  Plaintiffs appeal from an order sustaining a demurrer to their complaint for injunctive and declaratory relief.[1]

Defendant Port of Cascade Locks proposes to build an aerial tramway or cableway from the outskirts of the city of Cascade Locks to Ruckel Spur at the top of the Columbia Gorge in the Mt. Hood National Forest. The purpose of the tramway, according to the complaint, is to attract tourists and other casual visitors. Plaintiffs are owners of real property within the Port boundaries and object to the proposed tramway contending that the Port has no authority to build a recreational attraction of this kind.

---

[1]The demurrer in this case was based on a claim that plaintiffs failed to state a cause of action. The parties have not raised the issue of the propriety of a demurrer to a complaint seeking a declaratory judgment.

It is generally held that a demurrer is an inappropriate pleading in a declaratory judgment action. *Cabell et al. v. Cottage Grove et al.,* 170 Or 256, 130 P2d 1013, 144 ALR 286 (1943); 1 W. Anderson, *Actions for Declaratory Judgments* 740, § 318 (2d ed 1951). This would seem especially the case where a demurrer is based on failure to state facts sufficient to constitute a cause of action. The issue of whether plaintiff has stated a cause of action in a declaratory judgment context is easily confused with the question of whether the plaintiff is correct in theory and entitled to an injunction or other substantive relief. Where this confusion occurs and the trial court concludes that the plaintiff is incorrect in theory, the reasoning of the trial court and of the defendant is obscured by the conclusory final order which consists of the phrase "demurrer sustained."

A cause of action in a declaratory judgment context consists in the aggregate of operative facts affording grounds for judicial relief. E. Borchard, *Declaratory Judgment* 17 (2d ed 1941). Judicial relief, in a declaratory judgment context, consists of a declaration of rights and not necessarily a declaration of rights in accordance with plaintiffs' theory. *Cabell et al. v. Cottage Grove et al.,* supra at 261. It would seem that a complaint for declaratory judgment would usually state a claim for which relief, i.e., a declaration, may be granted. Dictum in *Webb v. Clatsop Co. School Dist. 3,* 188 Or 324, 215 P2d 368 (1950), to the effect that a demurrer is appropriate in a declaratory judgment if the complaint is vulnerable upon any of the statutory grounds of demurrer, including failure to state a cause of action, appears to be in conflict with the general principle that demurrer for failure to state a claim is inappropriate. *See also, Cornelius v. City of Ashland,* 12 Or App 181, 506 P2d 182, Sup Ct *review denied* (1973). As the parties in this case have failed to raise the issue and because the disposition in this case may be made without reference to the problem, there is no need to resolve the apparent conflict raised by *Webb* here.

Defendants' demurrer relies on ORS 777.210(3), which provides:

"A port may:

"* * * * *

"(3) Acquire, construct, maintain or operate sea walls, jetties, piers, wharves, docks, boat landings, warehouses, storehouses, elevators, grain bins, terminal icing plants, facilities for processing agricultural, fish or meat products, bunkers, oil tanks, ferries, canals, locks, tidal basins, bridges, subways, *tramways, cableways,* conveyors, power plants, power transmission lines, administration buildings and fishing terminals, and modern appliances and buildings for the economical handling, packing, storing and transportation of freight and handling of passenger traffic with full power to lease and sell the same, together with the lands upon which they are situated, whether held by the port in its governmental capacity or not." (Emphasis supplied.)

A public agency can only do those things that are specially authorized by law. *Gouge v. David et al.,* 185 Or 437, 459, 202 P2d 489 (1949); *Hawkins v. Bd. of Medical Exam.,* 23 Or App 320, 542 P2d 152 (1975). One of the problems apparent from a consideration of the briefs in this case is that the Port believes that it is endowed with all of the powers of pure municipalities, viz., cities. The Port is more properly viewed as a public agency authorized by the legislature to be created to carry out certain enumerated functions other than community government. Thus a port is limited in its powers and functions to those attributes delegated to it for the performance of its limited objectives. 1 McQuillin, Municipal Corporations 151, §§ 2.13, 2.23 to 2.29 (3d ed 1971). This distinction between ports and pure municipalities such as cities was clearly drawn in Oregon in *State v. Port of Astoria,* 79 Or 1, 23, 154 P 399 (1916). *Accord: Rose v. Port of Portland,* 82 Or 541, 162 P 498 (1917). Similarly, in a Washington case construing the statutory authority of the Port of Seattle to manufacture and sell ice under a

[ 380 ]

provision of a state statute similar to ORS 777.210, the Washington Supreme Court observed:

> "Counsel's argument rests upon an assumption, oft repeated and as many times assumed, that the port district is the city of Seattle and King county, and whatever is done by it within these limits and which may affect the inhabitants of these political subdivisions is within its power to maintain 'terminal icing plants.' Geographically and as a unit for bonding or taxation to meet money demands, the port district is King county, but as a business corporation, the activities of the port district are limited to its own field of endeavor as outlined by the act creating it and by its necessary implications. * * *" *State ex rel. Hill v. Port of Seattle,* 104 Wash 634, 639-40, 177 P 671, 673, 180 P 137 (1919) (holding Port lacked authority).

■■ The trial court in this case apparently treated the reference to tramways and cableways in ORS 777.210(3) as dispositive. It is not. The Port could not, for instance, build a ski lift up Mt. Hood and expect to legitimize the construction by a reference to the authority to build cableways. The Port may build tramways and cableways, but the structures must further a legitimate Port activity or purpose authorized by law. *See, State ex rel. Huggins v. Bridges,* 97 Wash 553, 166 P 780 (1917). Plaintiffs in this case have stated the existence of a controversy and are entitled to a declaration of rights. *Cabell et al. v. Cottage Grove et al.,* 170 Or 256, 130 P2d 1013, 144 ALR 286 (1943).

Reversed and remanded for further proceedings not inconsistent with this opinion.