Argued October 17, reversed December 4, 1978, reconsideration denied
January 30, Sup Ct review denied May 1, 1979, 286 Or 303

HARRISON et ux, *Appellants,*

*v.*

PORT OF CASCADE LOCKS et al,
*Respondents.*

(No. 7364, CA 10027)

587 P2d 496

Barbee B. Lyon, Portland, attorney for appellants, argued the cause and filed the briefs for appellants.

Kenneth M. Abraham, Portland, argued the cause and filed the brief for respondents.

Before Schwab, Chief Judge, and Johnson and Gillette, Judges.

GILLETTE, J.

[ 391 ]

**GILLETTE, J.**

This declaratory judgment proceeding challenging the proposed construction of an aerial tramway by defendants in the Columbia Gorge is before us for a second time. On the first occasion we held that plaintiffs had pleaded a good cause of action for declaratory relief, and that a demurrer to their complaint shoud therefore have been overruled. *Harrison v. Port of Cascade Locks,* 27 Or App 377, 557 P2d 160 (1976), *rev den* (1977).

On remand, the cause was tried and judgment given for the defendants. Plaintiffs again appeal. We reverse.

The background facts are stated in our former opinion and need not be repeated here. The pivotal finding of fact made by the circuit court judge at trial (and conceded by defendants to be correct) is:

"* * * The Court does find [that] * * * the tramway will carry no freight except incidentally for the convenience of its riders, with the possible relatively rare exception of something that might be taken up in connection with fire fighting or some forestry activities, but that the evidence is [that] * * * the primary purpose of the tramway would be to carry people. The defendants have alleged it would be for pleasure and commercial purposes. The Court does find that the transportation of the people will be primarily for the pleasure of the people involved and for the general commercial interests of the Port and does find that it would have general commercial value to the area * * * [but that it is] primarily a recreational facility for the enjoyment of the people riding up and down and not generally for [the passengers'] commercial purposes."

In other words, the Port intends to go into the business of operating a tramway for public enjoyment.

Since port districts are creatures of statute and may only exercise the authority granted by statute, the sole question becomes whether the Port is authorized by statute to operate such a tramway. The Port's prin-

[ 393 ]

cipal argument in this regard is that it is authorized by ORS 777.210(3), which provides,

"A port may:

"* * * * *

"(3) Acquire, construct, maintain or operate sea walls, jetties, piers, wharves, docks, boat landings, warehouses, storehouses, elevators, grain bins, terminal icing plants, facilities for processing agricultural, fish or meat products, bunkers, oil tanks, ferries, canals, locks, tidal basins, bridges, subways, *tramways, cableways,* conveyors, power plants, power transmission lines, administration buildings and fishing terminals, and modern appliances and buildings for the economical handling, packing, storing and transportation of freight and handling of passenger traffic with full power to lease and sell the same, together with the lands upon which they are situated, whether held by the port in its governmental capacity or not." (Emphasis added.)

ORS 777.210(3) does not support defendants' position.

"The Port may build tramways and cableways, but the structures must further a legitimate Port activity or purpose authorized by law." *Harrison v. Port of Cascade Locks, supra,* 27 Or App at 381.

This recreational facility is simply a commercial enterprise related to the geographical characteristics of the Columbia Gorge and not to any operational need of the Port. As the language of our earlier opinion and of ORS 777.210(3) itself demonstrates, the Port's authority is not so broad.

Defendants further argue, however, that certain other provisions of ORS ch 777, when read in conjunction with ORS 777.210(3), demonstrate that the construction of a recreational tramway is a "legitimate port purpose." ORS 777.835,[1] in authorizing the

---

[1] ORS 777.835 provides:

"(1) The commission, through the division, shall be the state-wide coordinating, planning and research agency for all ports and port authorities in this state to insure the most orderly, efficient and economical development of the state port system.

Economic Development Commission to be the statewide coordinating agency for port activities involving "recreational development," suggests building this tramway is a "legitimate port function." To the contrary, we view the statute as merely recognizing that certain recreational facilities—such as marinas and parks—incidental to a port's primary function as a facility aiding the movement of goods and services in commerce must be kept in mind when port planning occurs. It cannot be treated as separately authorizing ports to go into the general public recreation business.

Our view is supported by an examination of several other portions of ORS ch 777, cited to us by defendants, which authorize ports to do specific things. In each of these statutes, the authorized function is either one connected with the normally expected activities of managing a port, or where it is not, is carefully delineated. Examples of the former kind of statute are ORS 777.112(2) ("may enter into any contract * * * for the use and control of water for promoting erosion control, pollution control or otherwise protecting, maintaining and enhancing waters within the boundaries of the port district"); ORS 777.230 (ports may generate the electricity necessary for "any of the work ports are authorized by law to engage in"); and ORS 777.258 (ports "may, in general, do such * * * things * * * as tend to promote the maritime shipping, aviation and commercial interests of the port"). Examples of the latter kind of statute are ORS 777.113 ("may provide research or technical assistance for the planning, promotion or implementa-

"(2) Notwithstanding any other provision of law, after July 1, 1969, no port or port authority may be formed without the prior approval of the commission.

"(3) The commission, through the division, shall be the state-wide coordinating, planning and research agency for port activities involving international trade and international trade development and industrial, commercial and recreational development. Such coordinating, planning and research shall be coordinated with the activities of the Legislative Committee on Trade and Economic Development for its information."

tion of commercial, industrial or economic development projects upon request by any city, county or municipal corporation within the boundaries of the port"); ORS 777.132 ("may distribute water for domestic, * * * industrial, * * * irrigation purposes or for purposes of recharging ground water basins or reservoirs within or without the port"); ORS 777.195 (may "operate watercraft for the transportation of * * * merchandise, freight and passengers and engage generally in the coastwise trade and commerce, both domestic and foreign [and] * * * own, acquire railroad terminal grounds and yards and construct, operate and maintain such * * * lines of railroad * * * as may facilitate water commerce between common carriers and points within the port; * * * and carry * * * freight and passengers * * * over the lines"); and ORS 777.250 ("may acquire and develop land * * * for an industrial park").

We note particularly that ORS 777.195 and 777.250, which specifically authorize particular activities which might be viewed as at least analogous to the operation of a tramway such as that proposed here in that they authorize a port to conduct what are commonly thought of as private business ventures, circumscribe the circumstances under which such activity may occur. By contrast, if defendant's construction of the port's authority were to be adopted, the mere mention of "cableways" in ORS 777.210(3) would authorized far broader activity with cableways than that permitted in connection with railways or industrial parks for which there is specific legislation, and this would apply to a port's operation of warehouses, or grain bins, or oil tanks, each of which is also authorized by ORS 777.210(3). That is, the port could build a grain bin or oil tank in Morrow County, even though it could not build a railroad or an industrial park there. The legislature cannot have intended that result.

Reversed.