## GEORGIA-PACIFIC CORPORATION *v.*
## DEPARTMENT OF REVENUE

George Wittemyer, Georgia-Pacific Legal Department, Portland, represented plaintiff.

Donald C. Seymour, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered March 30, 1972.

CARLISLE B. ROBERTS, Judge.

The plaintiff appealed from the Department of Revenue's Order No. VL 71-362, affirming the actions of the Director of Assessment and Taxation of Multnomah County in (1) refusing the tender of property taxes and interest for the tax year 1968-1969 in connection with a building under construction on Lots 1 to 8, inclusive, Block 59, City of Portland, County of Multnomah, and the equipment and material located on the premises on January 1, 1968, to be installed in said building; (2) in refusing to rescind the property

tax exemption granted with respect to said property for the tax year 1968-1969; and (3) in denying plaintiff's application for exemption of said property from ad valorem taxes for the tax year 1970-1971.

The question to be answered by the court may be stated thus: May a taxpayer which lawfully has been granted a cancellation of ad valorem assessment of a building under construction for two consecutive years, pursuant to the provisions of ORS 307.330 and 307.340, require the county assessor (1) to reinstate the assessment for the first year of exemption (the taxpayer revoking its election and tendering the tax with interest for such year) and, thereafter, (2) to cancel the assessment for the third year (the subject property being qualified in all other respects for exemption in the third year)? The statutes do provide for the exemption "from taxation for each year of not more than two consecutive years" and both parties agree (as does the court) that, where the construction continues for more than two years, the taxpayer can elect the consecutive years in which it will claim the exemption by its act of filing proper proof for the first of the two consecutive years. *Urban Off. & Parking v. Dept. of Rev.,* 4 OTR 523 (1971). There is no explicit provision in the statutes authorizing or prohibiting the rescission of the first election made by the taxpayer.

The facts are not disputed: The plaintiff began construction of its building in July 1967. The construction schedule called for completion on or before September 1, 1969. On the assessment date of January 1, 1968, the assessed value of the structure was $350,000, and on March 7, 1968, the plaintiff filed an application for exemption pursuant to ORS 307.340 and it was granted. During the winter of 1968-69,

unusually low temperatures were experienced for a protracted period, causing delays in construction, but plaintiffs were assured by the contractors that the work would be completed in 1969. On January 1, 1969, the assessed value of the property was $4,000,000 and on February 25, 1969, a claim for exemption was made by the plaintiff and it was granted. Toward the latter part of 1969 it became clear that the building would not be completed and usable before the assessment date of January 1, 1970. It was apparent that, except for the provision restricting the exemption for two consecutive years, the plaintiff's building would meet all the requirements of ORS 307.330 on January 1, 1970, when the value of the structure would be $13,-500,000. On November 14, 1969, the plaintiff made a tender to the Director of Assessment and Taxation of Multnomah County of the amount of the 1968 tax and statutory interest and asked that the election made by the plaintiff for exemption for the tax year 1968-1969, pursuant to ORS 307.330, be revoked. On December 18, 1969, the director (who, under Multnomah County's charter, acts as both assessor and tax collector) refused the tender and rejected the request for revocation as outside his statutory authority. On January 1, 1970, the building, still in the course of construction, was assessed at $13,500,000. On March 4, 1970, the plaintiff sought exemption under ORS 307.330 for the tax year 1970-1971 and it was refused by the Director of Assessment and Taxation on the ground that the plaintiff had already obtained exemption for two consecutive years under the statute.

The plaintiff's chief contention is that the Director of Assessment and Taxation "has authority to cancel a tax exemption already granted" (plaintiff's Memorandum of Law, page 23), and it cites the "omitted

property statute," ORS 311.207 et seq., as its authority. The court has no doubt that an assessor who is convinced that in a prior year he had erroneously granted a statutory exemption through mistake of fact or law could utilize that statute to redress the error, but this does not describe the facts in the present case. Notwithstanding the plaintiff's choice of words, it is actually arguing that the director has authority to sanction the taxpayer's attempted revocation of its lawful election for a property tax exemption in one year because an unexpected situation in a subsequent year diminished the value of the election.

█ The offices of assessor and tax collector were created by statutory enactments of the Legislative Assembly. If the assessor or the tax collector has authority to sanction the revocation of an election in the present instance, it must be based on the statutes. It is admitted by all that the statutes make no explicit provision for taxpayer revocation of the election; after a careful review of the statutes and the history of their enactment, it seems equally obvious that there is no latent or implicit power to be found in the statutes which authorizes a revocation of election.

The history of state and local taxation justifies a conclusion that the Legislative Assembly deemed the administrative standards in the field of taxation to be too important to be left to the discretion of tax officials. A little of this history is recounted in the Department of Revenue's First Biennial Report, 1968-70, pages 1-3. The multitudinous directions for assessors and tax collectors contained in ORS chapters 308, 309, 311 and 312 are cogent evidence of the legislature's insistence on precise requirements being imposed on tax administrators. Studies of the details in these highly specific statutes give no warrant for

free, independent, novel action. To paraphrase *Layman v. State Unemp. Comp.*, 167 Or 379, 401, 117 P2d 974 (1941), it is an elementary and fundamental principle, which no one will dispute, that an assessor or tax collector, whose office is created by the legislature to administer a statute, is wholly limited in his powers and authority by the law creating the office. There is no room for the play and action of purely personal and arbitrary power, even to accomplish what the officer may deem to be laudable ends.

An assessor is specifically prohibited from changing the assessment roll after the May 1 date preceding the fiscal year for which the roll is prepared. ORS 308.242. In November 1969, at the time of plaintiff's tender of the 1968-1969 tax and its request to revoke its 1968 election, the pertinent tax roll was in the hands of the Multnomah County Director of Assessment and Taxation in his role of tax collector. He had no authority at that time to change the roll except to correct an "error" as that term is used in ORS 311.205 to 311.220, the "omitted property" sections. The facts in the present case do not constitute such an error. *State ex rel. v. Smith et al.,* 197 Or 96, 252 P2d 550 (1953).

The plaintiff has cited 10 Mertens, *Law of Federal Income Taxation,* § 60.19, relating to the doctrine of election. On page 85 of that volume we find:

> "A necessary requirement for an 'election' is that there be a 'manifestation of choice,' a clear exercise of the option as shown by some overt act. The election usually involves some option offered by a statute or a Regulation, and even where these do not expressly provide that an election once made is binding, the courts have uniformly applied that rule. [citing cases] * * * A material mistake of fact may, however, vitiate an election. The mistake must be one of fact. No relief will be granted where

the mistake is one of law. However, the mistake of fact referred to must be a mistake of existing fact. An oversight, an error of judgment, or unawareness of tax consequences does not lessen the binding character of an election. In this connection it must be remembered that the principles governing election are equitable, and the considerations which deal with finality or irrevocability are all directed toward fairness and equity. [citing cases]"

The rule that an election, freely made, is binding, is generally upheld by the courts for the reason stated in *Pacific National Co. v. Welch,* 304 US 191, 58 S Ct 857, 82 L Ed 1282, 20 AFTR 1248, 38-1 USTC ¶ 9286 (1938), *aff'g* 91 F2d 590 (9th Cir 1937), 19 AFTR 1148, 37-2 USTC ¶ 9445:

"* * * Change from one method to the other, as petitioner seeks, would require recomputation and readjustment of tax liability for subsequent years and impose burdensome uncertainties upon the administration of the revenue laws * * *."

See also *Estate of Richard R. Wilbur,* 43 TC 322 (1964); *Landy Towel & Linen Service, Inc.,* 38 TC 296 (1962); *Frank T. Shull,* 30 TC 821 (1958); *Burke & Herbert Bank & Trust Co.,* 10 TC 1007 (1948); *Estate of Cyrus H. K. Curtis,* 36 BTA 899 (1937).

The plaintiff argues that its election is vitiated by a material mistake of fact. The court finds no mistake of fact of any kind on the part of the plaintiff or of the administrator. There was a subsequent fortuitous change of circumstances (the inclement weather), but this has nothing to do with the election. The plaintiff is expected to pay only those taxes which it contemplated paying when it made its election in 1968. It is indeed unfortunate that the building's potential for income production was not realized early in January

1970, as expected, but this is a hardship which was not related to the election.

Pursuant to ORS 305.425, the plaintiff's appeal to the Tax Court was "an original proceeding in the nature of a suit in equity" and the plaintiff's arguments in large part have been "equitable." But a court of equity will not assume power to administer justice because of the hardship of a case or because a bargain is unprofitable. 27 Am Jur2d *Equity* § 25 (1966). The actor must bear the loss where the parties are equally innocent. *Op. cit.* § 146. Where the public interest in preserving the revenue is placed in balance with the plaintiff's interest in offsetting a misfortune, the public interest must prevail. *Op. cit.* § 77.

The order of the Department of Revenue, No. VL 71-362, is affirmed.