## HUGH B. and HELEN L. WOOD v. OREGON STATE BOARD OF FORESTRY

Edward Ray Fechtel, Husband, Johnson & Frye, Eugene, represented plaintiffs.

G. F. Bartz, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered March 9, 1973.

Carlisle B. Roberts, Judge.

Plaintiffs, husband and wife, appealed from a decision of the Oregon State Board of Forestry pursuant to ORS 321.765, a part of the Western Oregon Small Tract Optional Tax Act.

The court finds from the testimony that the plaintiff husband (hereinafter referred to as "plaintiff") is a university professor with no special training in forestry or in the tax laws respecting forest land in Oregon. He had long owned a former farm site of about 81 acres in Lane County, on or near the borders of the City of Eugene, which was suitable for timber production. In 1970, following a program of tree planting, he requested and obtained from the Director of the Department of Assessment and Taxation, Lane County (hereinafter referred to as the "assessor") a classification of 81 acres, more or less, as "forest land" pursuant to the Western Oregon Ad Valorem Timber Tax Act (hereinafter referred to as the Timber Tax Act), ORS 321.605-321.680. By so doing, he effected a substantial reduction in the taxes otherwise payable on the Lane County land.

In 1965, the plaintiff acquired a tract of approximately two acres (including a homesite) on the coast, west of the City of Tillamook, in Tillamook County, Oregon. As the property taxes increased over the years, it occurred to the plaintiff that this land could be planted in trees and classified as forest land. He paid several visits to the County Assessor of Tillamook County and she finally suggested that the small acreage might more appropriately be placed under the Western Oregon Small Tract Optional Tax Act (hereinafter referred to as the Optional Tax Act), ORS 321.705-321.765, rather than under the Timber Tax Act. At her suggestion, he made contact with Mr. Ernest Pearson, a "farm forester" with headquarters in Forest Grove, responsible for the Tillamook area.

Mr. Pearson visited the site and agreed that, with proper planting, it could be approved under the Op-

tional Tax Act. After a lengthy interview, he left with the plaintiff a 12-page pamphlet entitled "State of Oregon Department of Forestry, 'Small Woodland Option Timber Tax Law for Western Oregon,' Information Bulletin No. 1, Rev. September, 1969," and official forms for making application for classification of forest lands in accordance with the Optional Tax Law. Plaintiff described his conversation with Mr. Pearson:

> "* * * We also talked about the procedures that would be followed if I were to apply for this under the state program [the Optional Tax Act]—the paper procedures, as well as the actual procedures, the source of—we talked about the source of trees, how many trees to plant, what species of trees, and when they should be planted. We covered those points and then we turned to the program here in Eugene [under the Timber Tax Act]. I told him how happy I was with it, explained that I had planted the 81 acres here [in Lane County] and it was under a similar program. It was under the—it was under the Lane County but, as I understood the programs, they were practically the same. We talked at considerable length about this program in Eugene and the advantages of turning land in the state—barren land throughout the state into timberland and we talked about the purpose of the law with the—what I now know to be two laws, that is, two separate provisions. We talked about the programs."

At no time were negative tax aspects of the program discussed.

The planting of the land in Tillamook was completed about the first of 1970. The plaintiffs made application for the classification of the Tillamook land on the Department of Forestry's form 629-P-8M1 on November 11, 1971.

On the face of the form is a box with columns which call for a description of the property under headings of county, account number, code number, tax lot number, total acres in tax lot, estimated forest land acres, and section, township and range. Just above the box is a parenthetical statement reading:

"(List *all* eligible forest land owned by the APPLICANT OWNER in Western Oregon except land already classified in the name of the applicant owner under this Act:)"

Preparing the application form, the plaintiff listed the Tillamook property, but reviewing the form, gave further consideration to the parenthetical statement. Rereading the Information Bulletin No. 1, referred to above, he noted on page 2 thereof the following:

"Only owners having a total ownership of forest land (see 'forest land' definition, page 1) in western Oregon not in excess of 1,000 acres are entitled to classify forest land under this law. In computing an owner's acreage to determine total ownership, his total ownership must be included even though portions of his forest land may not be eligible for classification. *Total ownership* includes forest land owned by the applicant owner individually and also any forest land owned by any corporate or other group owner in which the applicant owner holds a share of ownership of 10% or more.

"An owner electing to classify any of his eligible forest lands under this Act must classify *all* his eligible lands."

The plaintiff was impressed that he should make a record to show that he came within the thousand-acre restriction. Accordingly, he destroyed the first application form and, on the second, in the first horizontal line of the boxes, inserted words and figures indicating that he had 81 acres in Lane County, Code No. 401,

Tax Lot No. 3500, containing 81 estimated forest land acres, and added: "(Has been classified as forest land by Lane County.)" He did not indicate section, township or range thereof. He then drew a wavy line across the box, to indicate a separation of the foregoing information from what he intended as his actual application, following which he described his Tillamook land, showing two acres in the tax lot and an estimated forest land area of 1.5 acres, and specifying the section, township and range.

Immediately below the box above described, the form contains the following printed statement:

"The undersigned applicant owner does hereby certify that the above described land includes the entire ownership of eligible forest land, *as defined by ORS 321.705 (3)* in Western Oregon; that he is the legal owner * * *." (Emphasis supplied.)

ORS 321.705 (3) is a subsection in the Optional Tax Act which defines "forest land" as follows:

"(3) 'Forest land' means land which is not classified as reforestation land under ORS 321.255 to 321.355 [known as the 'Forest Fee and Yield Tax Law'] and which, in the judgment of the State Forester, is suitable for the production of timber and is being utilized primarily for that purpose."

Since the forest fee and yield tax has no bearing on this particular case, any land of the plaintiffs "suitable for the production of timber * * * being utilized primarily for that purpose" must be included within the claim for classification under the Optional Tax Act, including land presently classified under the Timber Tax Act because ORS 321.725 (3) provides:

"(3) An owner electing to classify any of his eligible forest lands under ORS 321.705 to 321.765 must classify all of his eligible lands."

The State Forester had sought to make this clear to the applicant by his language and code citations in the official application form and in Information Bulletin No. 1, but the requirement eluded the plaintiff. He thought that since the Lane County tract had already been classified as "forest land," its acreage should be included in the thousand-acre limitation referred to above, but it never occurred to him that it would then be declassified under the Timber Tax Act and be reclassified under the Optional Tax Act.

The plaintiff's application for classification of the Tillamook County land under the Optional Tax Act was approved by the State Forester and, as required by ORS 321.725 (3), the State Forester also included the Lane County property under the Optional Tax Act. ORS 321.750 places a duty upon the State Forester to notify a county assessor if forest land in his county is withdrawn from the Timber Tax Act and placed under the Optional Tax Act and to advise the county assessor if any tax adjustment required by that section must be made. The State Forester carried out this requirement in a letter dated December 29, 1971, addressed to Mr. John Parkhurst, Director, Department of Assessment and Taxation, Lane County Courthouse, Eugene, Oregon, with a carbon copy to the plaintiff husband and wife. It advised them that: "In this case no Adjustment Tax is due."

Until he received this letter, the plaintiff had no idea that his Lane County property would be declassified under one act and then classified under a second act. He thereupon visited Mr. George Saunders, a member of the Lane County assessor's staff who was assigned to timber valuation, showed him the letter of the State Forester of December 29, 1971, and

learned about the reclassification. The plaintiff asked Mr. Saunders whether this would make a difference to the plaintiff in the amount of taxes to be paid and learned that there would be a future adjustment because under the Timber Tax Act he had been assessed at $28 per acre, whereas under the Optional Tax Act he would be assessed at $55 an acre in future years. This was acceptable to him. He was still unaware that, under the requirements of ORS 321.619 (1) (a) (D), the county assessor was required to bill for past, deferred taxes as measured under ORS 321.621. Under date of February 28, 1972, the county assessor wrote to the plaintiffs to this effect, billing them for taxes and interest for the year 1970 in the sum of $1,211.46, and for the year 1971 in the sum of $1,508.49, a total of $2,719.95, with interest calculated to November 15, 1972.

Thereupon, under date of April 15, 1972, the plaintiffs petitioned the State Forester for an "annulment" of the action taken upon the plaintiffs' petition of November 11, 1971, to restore the status quo ante. A hearing before the State Board of Forestry was held on May 18, 1972, a negative decision was made on June 7, 1972, and the plaintiffs were advised thereof by letter of June 15, 1972, the decision being based upon the ground that the board had no legal authority to take the requested action.

The plaintiff is not trained in law but he is a highly educated man who diligently studied the materials available to him, sought to file a complete application and yet never received any intimation that the deferred taxes under the Timber Tax Act would be required of him as a result of his election. On first thought, this might appear to be a case for equitable

estoppel (cf. *Pilgrim Turkey Pckrs. v. Dept. of Rev.*, 261 Or 305, 493 P2d 1372 (1972)), but no determination is called for on this issue because it was never pleaded. *Brandtjen & Kluge v. Biggs,* 205 Or 473, 288 P2d 1025, 51 ALR2d 1435 (1955), *Couch v. Scandinavian-American Bank et al.,* 103 Or 48, 197 P 284 (1922).

■■ The court has adverted to the possibility that since both the Timber Tax Act and the Optional Tax Act deal with the special taxation of forest lands and represent complementary legislative policies leading to similar goals (see ORS 321.610 and 321.710), plaintiffs' Lane County land should not have been declassified under ORS 321.619 and 321.621 as "forest land," since it was to be placed immediately into "forest land." It is surprising that a legislature, if it considered its goals to be significant and desirable, would impose a substantial tax burden on a person such as the plaintiff who is continuing to cultivate the forest land and is merely shifting from one statute to the other. One could think that the provision for the adjustment of tax found in ORS 321.750 would be sufficient, without the additional tax of ORS 321.621. However, a study of the two acts shows a sufficient difference in a number of aspects to require the conclusion that "forest land," as defined in ORS 321.605 (3) and 321.705 (3), cannot be deemed the same thing in both statutes. The imposition of the tax under ORS 321.621, in this case, is specifically linked with a shift from the designation of land "under the provisions of ORS 321.617 to 321.621" to a different designation, including the designation of forest land under the Optional Tax Law.

In each step of the proceedings initiated by the

plaintiff, the officers of both county and state governments meticulously followed the requirements of the statutes applicable to them in their respective roles. The plaintiffs' election was binding and no officer had power to change it. Cf. *Georgia-Pacific v. Dept. of Rev.*, 5 OTR 33 (1972), *aff'd* 264 Or 260, 504 P2d 704 (1972), and cases cited therein. Until the county assessor mailed the billing of February 28, 1972, there was no duty imposed upon any officer to advise the plaintiff of the effect of ORS 321.621 prior to the time when it was done by the assessor in accordance with the requirements of the statute.

The order of the defendant is affirmed.