KENNETH J. BYLUND, Director, Department of
Assessment and Taxation of Lane County
*v.*
DEPARTMENT OF REVENUE
DAREN C. ENGEL, Intervenor

Arthur J. Clark, Assistant County Counsel for Lane County, Eugene, represented plaintiff.

G. F. Bartz, Assistant Attorney General, Salem, represented defendant.

A. J. Giustina, Hoffman, Morris, Van Rysselberghe & Giustina, Eugene, represented intervenor.

Decision for plaintiff rendered March 6, 1978.

CARLISLE B. ROBERTS, Judge.

The Director of the Department of Assessment and Taxation of Lane County, Oregon (hereinafter designated the "county assessor"), has appealed to this court from the Department of Revenue's "supervisory order," Order No. VL 76-673, dated November 12, 1976, applying to the tax year 1975-1976. Provision for the appeal is found in ORS 306.547 (1975 Replacement Part). Each of the parties, including the affected taxpayer-intervenor, Daren C. Engel, was represented by counsel in this court, and the parties, through their counsel, submitted the case on a stipulation of facts, accompanied by exhibits and supported by written

briefs. The matter is replete with problems, sparked by the interrelationship of the Western Oregon Ad Valorem Timber Tax Act, ORS 321.605 to 321.680 (1973 Replacement Part), hereinafter referred to as the "Timber Tax Act," and the Western Oregon Small Tract Optional Tax Act, ORS 321.705 to 321.765 (1973 Replacement Part), designated herein as the "Optional Tax Act." The bridge between the two acts is their different, but overlapping, definitions of "forest land" and the requirements of ORS 321.725(3). The problem is described in *Wood v. Ore. St. Bd. of Forestry,* 5 OTR 193 (1973) (appeal to the Supreme Court dismissed per stipulation). The facts in the case before the court with respect to Mr. Engel's application for the benefits of the Optional Tax Act closely parallel those in the *Wood* case. However, Mr. Engel, the taxpayer-intervenor, relied on estoppel in his appeal to the Department of Revenue.

Although one or more important facts are not presented as clearly as is desirable in a cause thus submitted, enough is offered to enable the court to render a decision. These facts (derived from the stipulation and exhibits) are set out in chronological order below, together with the legal questions suggested by them. (Unless otherwise stated, all citations to the Oregon Revised Statutes are taken from the 1973 Replacement Part, the law pertinent to the tax year involved, 1975-1976.) The stipulation provides that the transcript of the hearing, held by the defendant's hearing officer on April 12, 1976, pursuant to Mr. Engel's petition, may be considered by the court in making its decision. The court will also be guided by the pertinent disputable presumptions stated in ORS 41.360, particularly subsection (15), "[o]fficial duty has been regularly performed"; and the court will utilize ORS 41.410, respecting facts which can be judicially noted.

The taxpayer-intervenor, Mr. Engel, was and is engaged in the real estate business in Springfield, Lane County. Associated with him are Mr. H. Doyle

McMillin, Mr. Richard Bye and perhaps others. Prior to 1973, Mr. and Mrs. Engel were owners of certain forest land known to them as the "Wallace Creek property." On February 21, 1973, Mr. and Mrs. Engel made application to place this land under the provisions of the Timber Tax Act. This act is chiefly designed to encourage the propagation of merchantable timber by "large" holders of forest land (more than 1,000 acres). It establishes a method of taxation "which will permit sustained yield forestry" (ORS 321.610) and offers, in effect, a deferral of taxes. However, ORS 321.619 provides for removal of the "forest land" designation under certain circumstances and ORS 321.621 provides for a recapture of deferred taxes under a formula if such land is subsequently removed from the designation. The printed form required by law for making application for designation as forest land under the Timber Tax Act is specifically described in ORS 321.618(2), is prepared by the Department of Revenue, is supplied by the county assessor to the applicant and is required to include, *inter alia*:

"(L) A statement that the applicant is aware of the potential tax liability involved when the land ceases to be designated as forest land."

On the February 21, 1973, application, Mr. and Mrs. Engel signed an affirmation, under penalties for false swearing, which included the following statement:

"As owner(s) of the above-described land, I (we) indicate by my (our) signature(s) below that I (we) are aware of the potential tax liability involved when the land ceases to be designated as forest land. (See Item 11 on back.)"

On April 8, 1973, the land was approved as forest land by the county assessor and the provisions for a tax deferral were placed in effect by him.

Subsequently, Mr. Engel, Mr. McMillin and Mr. Bye obtained other forested lands as tenants in common and considered the possibility of placing them

under "some tax relief plan." (Mr. Engel, Tr, Departmental Hearing, 1.) In early 1974, after discussion of the question with Mr. Engel (and at the latter's request), Mr. McMillin visited the office of the Lane County Department of Assessment and Taxation to inquire about timber tax deferral. He testified that he was referred by that office to the local branch of the State Department of Forestry, located in the Santa Clara area of Eugene. At the forestry office, Mr. McMillin talked to a forester on duty, Mr. Williams,

"* * * and told him about all these different properties that we had, * * *.

"* * * So anyway, he explained, as I recall, about three different, it seemed like it to me, there was three different ways you could go, anyway, the small woodlands act [the Optional Tax Act] as I remember is what he called it. * * * He just described the different programs but that he questioned me about what our plans were and he seemed to think that was the best way for us to go and he never mentioned that if you owned a piece of property that was in one kind of a timber deal that if you went to another one, why then, that changed the whole thing and of course, I didn't own anything that was any different but I knew Daren [Engel] did, and this was just never mentioned at all. * * * He stated, as I remember, the difference being that the way Daren's was in, that you pay a whole gob at the time you harvest your tax, I believe that's correct, and the way we're going to pay a little more a year, I think, is this correct? Yeah. And that way you don't get hit so hard. So, anyway, that was the way he thought we ought to go, * * *." (Tr, Departmental Hearing, 4.)

"* * * * *

"[Williams] [j]ust explained all the different programs, you know, and in questioning about what our plans were, suggested his plan." (Tr, Departmental Hearing, 9.)

The intervenor's testimony leaves us in doubt as to the weight to be given to the McMillin-Williams interview. For estoppel purposes, there may well be a difference between a "recommendation" and a "suggestion." In the present record, it is difficult to

measure the responsibility Mr. Williams assumed. He was never interrogated for the purposes of the hearing or of this trial.

Mr. McMillin admitted at the administrative hearing that he had never specifically asked Mr. Williams about the tax consequences of shifting from one forest land tax deferral plan to another. He didn't realize it would be a relevant question in the circumstances, although he knew of the Engel's Wallace Creek classification.

The State Forester's office supplies forms pursuant to ORS 321.730 for application under the Optional Tax Act, ORS 321.705 to 321.765, since it is administered by the State Forester. This act can provide certain tax advantages to the owner of the property. It was enacted almost simultaneously with the Timber Tax Act but was designed exclusively in aid of the "small" holder of timberlands and, together with advantages, imposes certain restrictions and obligations on the owner. One which is pertinent is found in ORS 321.725(2):

> "Only owners having a total ownership of forest land in western Oregon *not* in excess of 1,000 acres shall be entitled to classify forest land under this section. In computing an owner's acreage for purposes of this subsection, *his total ownership shall be included* even though portions of his forest land may not be eligible for classification under subsection (1) of this section. As used in this subsection, *'total ownership'* includes forest land owned by the applicant owner individually and also any forest land owned by any corporate or other group owner in which the applicant owner holds a share of ownership of 10 percent or more." (Emphasis supplied.)

Another restriction, important to carry out the stated legislative intent in ORS 321.710 and for the purposes of this suit, is found in ORS 321.725(3):

> "An owner electing to classify *any* of his eligible forest lands under ORS 321.705 to 321.765 must classify *all* of his eligible lands." (Emphasis supplied.)

Having obtained the application forms (Department of Forestry Form 629), the cotenants filled them out and, in order to meet the requirement (stated in the form) to list "all of my (our) eligible forest land in Western Oregon except land that is presently classified in my (our) name under this Act," properly included the Wallace Creek property which was owned solely by the Engels.

ORS 321.730(3) requires the State Forester, upon determination of eligibility for classification, to certify the determination to the county assessor or assessors of the county or counties in which forest land of the applicants is located, and to send a copy of such certification to the applicants. Such certification was made by the office of the State Forester on account of the Engel application to the Department of Assessment and Taxation in Lane County on June 11, 1974, to be effective on the following assessment date, January 1, 1975, for the tax year 1975-1976. The State Forester's action placed all of Mr. Engel's eligible land, including the Wallace Creek property, under the Optional Tax Act, because of the requirement of ORS 321.725(3), *supra*. (This would have been true even if Mr. Engel had not listed the Wallace Creek property on the Form 629, as required by the statute and by the form.) Thereupon, ORS 321.605(3) and 321.619(1)(a)(D) of the Timber Tax Act came into effect, requiring the removal by the county assessor of the designation for Mr. Engel's Wallace Creek property from the Timber Tax Act because of its inclusion in the Optional Tax Act.[1] Upon removal of the designation, it was incumbent upon the assessor to apply the provisions of ORS 321.621:

---

[1] *Rogers et al v. Dept. of Rev.,* 6 OTR 139, 142 (1975). The term "forest land" is used in both the Timber Tax Act and the Optional Tax Act, but with different meanings. *Wood v. Ore. St. Bd. of Forestry,* 5 OTR 193, 200 (1973). Intervenor's brief acknowledges that "[a] careful reading of the two definitions of forest land, set forth above, reveals that the requirements for land to be classified as WOAVT forest land are much more rigorous than the requirements under WOSTOT. * * *" (Intervenor's and Def Reply Br, 11.)

"(1) If land is designated as forest land as a result of an application being filed therefor * * * and the designation is later removed, there shall be added to the tax extended against the land on the next property assessment and tax roll, * * *:

"(a) The total amount by which the taxes assessed against the land would have been increased if it had been valued without regard to subsection (3) of ORS 321.617 and subsection (1) of ORS 321.619 during the five years preceding such extension on the roll * * *."

ORS 321.619(1)(b) requires that:

"Within 30 days after removal of a designation of forest land, the assessor shall so notify in writing both the taxpayer and the Department of Revenue and shall specify the reasons for the removal."[2]

The letter of advice written by the county assessor, under date of August 21, 1975, addressed to Mr. Engel, omitted the amount of the tax adjustment, $3,431.63. It read:

"This is to notify you that our office must remove the Forest Deferral Classification from your land described above due to it now being certified under Western Oregon Small Tract Optional Tax Law.

"The additional tax will be extended against the land and will appear as a Special Assessment #9 on your tax statement this fall."

Although the amount of tax was not specified, Mr. Engel made no inquiry of the assessor as to the total

---

[2] It is not clear from the record as to the exact date the assessor removed the designation of the subject property under the Timber Tax Act and placed it under the Optional Tax Act. The statute specifically requires notice to the taxpayer within 30 days after the removal of the designation. It should have been done on or before the first week in May 1975, at the latest, in order to present a correct assessment roll for January 1, 1975, to the county board of equalization. However, the record indicates that the assessor's declassification notice to the taxpayer was not sent until August 21, 1975, 14 months after the certification to the assessor by the State Forester. If the assessor violated ORS 321.619(1)(b), by sending the notice at a time later than the 30 days required by statute, it may be argued that his failure vitiates the declassification, within the principle enunciated in *Anaconda Company v. Dept. of Rev.*, 278 Or 723, 565 P2d 1084 (1977). However, the facts were not fully presented to this court, and the matter was not pleaded, and the court is left by the parties to follow ORS 41.360(15), referred to above.

[ 364 ]

effect of the assessor's act of removal. However, ORS 321.619(2) provides that a taxpayer whose forest land has had that designation removed, in whole or in part, may appeal to the Department of Revenue as provided in ORS 306.520, and, after appeal, the order of the department shall be subject to appeal to the Oregon Tax Court pursuant to ORS 306.545. The taxpayer-intervenor, Mr. Engel, apparently made a timely appeal to the Department of Revenue from the assessor's act of "removal" and a hearing was held on the taxpayer's petition on April 12, 1976. Those appearing before the hearing officer were Mr. Engel, Mr. McMillin, Jay Perry, Esq., representing Lane County, and Mr. George Saunders of the Lane County Department of Assessment and Taxation.

Mr. Engel had consulted legal counsel before the hearing. Although the attorney was not present, he had prepared a statement of facts and issues as an aid to the hearing officer and this was received as an exhibit. The counsel's memorandum refers to Mr. McMillin's interview with Mr. Williams of the state's Department of Forestry, and Mr. Williams' failure to speak of the tax adjustments which would follow the shift of forest land from one category to another. Counsel did not spell out the requirements necessary to prove equitable estoppel in his brief.

The Department of Revenue's Order No. VL 76-362 was issued on May 26, 1976, following the administrative hearing of April 12, 1976. It concludes that a representative of the State Forester had "recommended" the use of the Optional Tax Act for the land owned jointly by Messrs. Engel, McMillin and Bye and that, while the representative had not advised Mr. McMillin that such option must necessarily encompass all of the timberland any of the taxpayers owned, "no misinformation" was given to him. Petitioner's signed statement in the application for forest land designation of his awareness of the potential tax liability was

also noted.[3] The department rejected the theory of estoppel as inapplicable, finding that there had been no "misinformation" given by the forester to Mr. McMillin. "The most that can be said is that all aspects of the Western Oregon Small Tract Option were not fully set forth. * * *" (Order No. VL 76-362, at 2.) The defendant's conclusion follows the holding in *Wood v. Ore. St. Bd. of Forestry, supra,* but does not cite it.

The department's order ends with the stock clause regularly used by defendant, immediately under the signature of the director or deputy director:

"Note: If you are dissatisfied with this decision, you may appeal to the Oregon Tax Court in the manner provided by ORS 306.545 within 60 days after the date the Department's order was mailed to you."

However, Mr. Engel never utilized his legal remedy (a failure which is discussed below). Before the 60-day period of appeal to this court had elapsed, the intervenor, at a casual meeting on July 1, 1976, spoke to Oregon's governor about his problem. At the governor's suggestion, Mr. Engel mailed to the governor his statement of the facts in his case, accompanied by some exhibits, on July 6, 1976. On July 16, 1976, the governor forwarded the plaintiff's letter and exhibits to the defendant's director, asking him to examine them and to advise the governor if any relief for the taxpayer was possible. (The governor's duty thus to

---

[3]The Department of Forestry Form 629, like that used in the Timber Tax Act application, gives notice of potential tax liability in its Question 12:

"Are you aware of the potential tax liability involved when your forest land should cease to be classified under this Act (ORS 321.705 to 321.765)? Yes [   ] No [   ]."

The inclusion of this specific question in the form is required by ORS 321.730(1)(m). The affirmative answer to this question by Messrs. Engel and McMillin on January 22, 1974, some days after the interview with Mr. Williams, is mistakenly noted by the defendant at the departmental hearing as notice to the applicants which should have warned them of the tax liability they are here protesting. However, it was intended by the legislature to put the applicant on notice regarding a different part of the law respecting declassification found in ORS 321.760(3). It is the requirement of ORS 321.725 (causing a switch of the Wallace Creek property's classification) which is the focal point of dispute in this suit.

inquire is implicit in Or Const, Art V, §§ 10 and 13.) On August 2, 1976, the director responded by letter, advising the governor of his personal review of the recorded testimony and exhibits, stating that the pertinent statutes and case law had been reviewed by tax counsel from the office of the Attorney General, and the finding that the law had been followed. (The director also referred to the 1975 act, sponsored by the defendant, creating ORS 321.960 (1975 Replacement Part), effective September 13, 1975, as eliminating "a trap for future actions of unwary taxpayers.")[4]

On August 18, 1976, Mr. Engel's counsel mailed to the governor's office a copy of the letter dated August 21, 1975 written to Mr. Engel by the county assessor, quoted above. On August 26, 1976, the then legal counsel to the governor issued a memorandum to another member of the governor's staff, respecting the "Daren Engel Tax Appeal," discussing the estoppel theory and undertaking to distinguish the fact situation in the Engel case from *Wood v. Ore. St. Bd. of Forestry, supra.*

On November 12, 1976, the department issued its Order No. VL 76-673, reversing its Order No. VL 76-362, resulting in the present appeal to this court by Kenneth J. Bylund, Director, Lane County Department of Assessment and Taxation. The revising order recites, in part, at 1-2:

"Since the issuance of Opinion and Order No. VL 76-362, it has come to the attention of this Department

_____

[4]Section 4, ch 617, Or Laws 1975 (first effective on September 13, 1975, after the events giving rise to this suit), added a new section to the Miscellaneous Provisions of the Oregon timber tax laws, codified as ORS 321.960 (1975 Replacement Part). It is important to note that the new section does not terminate liability for deferred taxes, required in certain circumstances under the Timber Tax Act and the Optional Tax Act, but apparently is intended to mitigate in some degree the amount of deferred taxation which will be immediately charged upon a shift in the classification of land between one or another of three types of special assessment; *i.e.,* farm use property under ORS 308.370, the Timber Tax Act pursuant to ORS 321.617, or the Optional Tax Act per ORS 321.720. The record gives no clue as to the effect of this amendment if it were made applicable in the present suit.

[ 367 ]

that the said Opinion and Order served to perpetuate a gross injustice to this petition[er].

"ORS 305.090 and ORS 306.111 grant the Department general supervisory authority over the system of taxation throughout the state, and general supervision and control over the administration of the assessment and tax laws and over county assessors, together with the authority to do any act or give any order the Department deems necessary to see that property is assessed according to law.

"It has been a continuing policy of this Department to exercise its general supervisory authority to prevent gross injustices to taxpayers. * * *

"It is my opinion that Petitioner had a right to rely on the competency and completeness of advice from the State Board of Forestry. The inadequacy of that advice led directly to the grossly unjust assessment stemming from the declassification of Petitioner's forestland. The ultimate result was that Petitioner, rather than secure the advantage of preferential tax treatment for that portion of his property he wished assessed under the Western Oregon Small Tract Optional Tax, received an unanticipated declassification for lands already classified under the Western Oregon Ad Valorem Tax. It is my opinion that this is not the result the legislature intended by the enactment of these laws."

The defendant's order then requires that its first order, No. VL 76-362, be rescinded. The county assessor is then required to remove the Wallace Creek property portion of intervenor's property placed under the Optional Tax Act and restore the classification thereof under the Timber Tax Act. Further, it is ordered that the tax added for 1975-1976 on the intervenor's Wallace Creek property, resulting from the declassification, must be abated and stricken from the rolls and, if the intervenor has paid any or all of said tax, the amount must be refunded to him with interest from date of payment.

The plaintiff submits five "issues to be decided" (Pl Opening Br, 2); each will be considered in turn.

[ 368 ]

I. Does the Department of Revenue have the jurisdiction and power to order the cancellation of a tax which the county assessor is *required by law* to assess and collect?

This question merely begs the issue. The problem for the court is to ascertain what *is* "required by law." The statutory provision for the supervisory power chiefly relied upon by the defendant, ORS 305.090, requires that the department shall use its supervisory power "to the end that all taxable property is assessed uniformly *according to law* and equality of taxation *according to law* is secured." (Emphasis supplied.)

■ In reaching a decision, the court's first duty is to ascertain and carry out the intent of the legislature as expressed in the pertinent statutes, found in Oregon Revised Statutes (1973 Replacement Part, applicable during the period of all the intervenor's transactions here involved, February 21, 1973, through August 21, 1975), unless some bar or defense is found which, for reasons of public policy, requires a different result in the particular instance.

There appears to be no question as to the legislative intent; *i.e.,* to encourage the production of merchantable timber through the holding and prudent cultivation of timber and timberlands by persons capable of carrying out such a program. *See* ORS 321.610 and 321.710. The state's inducement to the owner of forest land was tax deferral during the anxious period of raising a product which is subject to many hazards. Tax deferral is not a complete relinquishment of tax by the taxing authority. The timber owner is expected to pay "additional tax" which, actually, requires the payment of deferred taxes under specific circumstances (*e.g., see* ORS 321.621, 321.735 and 321.750), including adjustments of deferred tax when the owner elects to switch from one timber tax program to another. (This, with little change, continues to be the legislative intent, as seen in the 1975 amendment codified as ORS 321.960, described in n 4, *supra.*) The

legislature makes an offer, subject to conditions. The applicant, by filing his application, agrees to accept the conditions.

The intervenor here made his election under ORS 321.725(1), subject to the conditions contained in ORS 321.725(2) to (4), including (3) which requires the classification of all eligible forest lands in one category. Although the intervenor pleads that he acted in ignorance, his written application, on Form 629, setting out his "eligible forest land" as well as land jointly owned with Mr. McMillin, was in proper form. Even if he had not included the Wallace Creek property in the formal application, it would have been added by the state and county officers. There was nothing in the form to suggest to these officers that the applicant was acting in ignorance of the law.

■ The court concludes that Mr. Engel acted without due care in making an important election, under which he is bound (estoppel not being approved in defendant's Order No. VL 76-362). *Georgia-Pacific v. Dept. of Rev.,* 5 OTR 33, *aff'd,* 264 Or 260, 504 P2d 704 (1972). The taxpayer must act responsibly. *See Renewal House, Inc. v. Dept. of Rev.,* 5 OTR 638, 644 (1974). (Under older decisions, Mr. Engel would be admonished even more severely. *See State v. Swensk et al.,* 161 Or 281, 293, 89 P2d 587, 591-592 (1939). The problem here is to determine where the line of responsibility is presently drawn.)

II. Does the Department of Revenue have the jurisdiction and power to order a county assessor to declassify lands which the State Forester has classified under the Optional Tax Act?

■ ORS 321.760(1) provides that only the State Forester shall certify to the owner and to the appropriate county assessor or assessors the removal from classification of any forest land previously classified under the Small Tract Optional Tax. ORS 321.765 advises that appeals from the State Forester's actions

under ORS 321.760 may be appealed by the owner of the affected property to the State Board of Forestry. The Department of Revenue's Order No. VL 76-673 was directed only to the Director of the Lane County Department of Assessment and Taxation and the Department of Forestry was in no manner privy to the department's order. The "supervisory" order required the county assessor to "declassify that portion of Petitioner's [intervenor's] property placed under the Western Oregon Small Tract Optional Tax and restore those parcels declassified under the Western Oregon Ad Valorem Tax. * * *" The defendant undertook to overturn a ruling of the State Forester in its own *ex parte* proceeding, without jurisdiction. *Thompson v. Dept. of Rev.,* 276 Or 371, 554 P2d 510 (1976), is distinguishable. The defendant's order was a nullity in this respect.

III. Does the Department of Revenue have the jurisdiction and power to order that some but not all of a taxpayer's eligible properties be declassified from the Western Oregon Small Tract Optional Tax?

■ The court concurs with the plaintiff that the department had no power to give an order which would "scramble" the classifications of the taxpayer's properties so that forest lands owned by him would come under both acts, contrary to ORS 321.725(3). *See also* 37 Op Att'y Gen 510 (1975). The court concurs in the statement of plaintiff, in his Opening Brief, 6:

"* * * Plainly, the participation in the Small Tract Optional Tax program is an all-or-nothing proposition with respect to eligible land, and there is no exception to this rule provided by the Legislature. The result of the Department's order is to place Intervenor Engel in an extraordinarily privileged position, not contemplated or allowed by the statute; the order is therefore invalid."

IV. Does the receipt of factual and legal information by the Department of Revenue from one of the parties to an appeal, without notice of or an opportunity to rebut such information given to the other party, render a subsequent decision in the appeal invalid?

This is a very important point. The defendant has not established rules for the exercise of the supervisory powers and it may well be that there are instances in which such power should be exercised without the delay of hearings. *Cf. Domogalla et al v. Dept. of Rev.,* 7 OTR 242 (1977) *aff'd* 283 Or 377, 584 P2d 256 (1978); *Venturacci v. Dept. of Rev.,* 6 OTR 194 (1975). The court does not feel fully advised by the present record and, since a decision on the point is not necessary for the outcome of this case, the court will refrain from seeking to answer the question posited until a better opportunity presents itself.

V. Does the Department of Revenue have the jurisdiction and power to review and reverse its adjudicative determinations?

The defendant's predecessor, the State Tax Commission, formerly was empowered to grant rehearings. *See* ORS 306.540 (in the first publication of Oregon Revised Statutes), enacted in Or Laws 1953, ch 708, § 7. However, this section was repealed by Or Laws 1961, ch 533, § 57, the act creating the Oregon Tax Court. Note is also taken that the same amendatory act, in Section 43 (codified in part as ORS 306.530(5)), prescribed that:

> "Subject to judicial review by the Oregon Tax Court and the Supreme Court, the hearing [conducted by the Department of Revenue] shall determine *finally* all questions of law and fact arising under the tax laws * * *." (Emphasis supplied.)

It is apparent that the legislative intent was to provide for an appeal to this court from all orders lawfully issued by the then State Tax Commission, eliminating a rehearing by the commission and vesting in the Tax Court "the sole, exclusive and final authority for the hearing and determination of all questions of law and fact arising under the tax laws of the state in cases within its jurisdiction. * * *" Or Laws 1961, ch 533, §§ 12 and 16. This rule applies to the Department of Revenue, which recognizes it (and

seeks to aid the taxpayer) by printing at the end of each of its orders a notice of the taxpayer's right to appeal from the department's determination to the Oregon Tax Court within 60 days. (Mr. Engel had this notice but waived the opportunity it presented.)

■■■ Because of the statutory procedural scheme established by the Legislative Assembly, for the direction of the appeals to and from the Department of Revenue, the mode becomes the measure of the power. The administrative agency has no powers except as they are clearly found in statutory grants of authority. *Gouge v. David et al.,* 185 Or 437, 459, 202 P2d 489, 498 (1949); *Harrison v. Port of Cascade Locks,* 27 Or App 377, 556 P2d 160 (1976); *Campbell v. Bd. of Medical Exam.,* 16 Or App 381, 391-392, 518 P2d 1042, 1047 (1974). As stated in *Emerald Radio Ass'n v. Commission,* 1 OTR 456 (1964), at 460:

> "The Tax Commission [now Department of Revenue] does not have the inherent power to reopen the proceedings after its final determination because unlike a court of general jurisdiction its adjudicatory powers are only those conferred by statute either expressly or by necessary implication. [Citations omitted.] The operative statute does not grant to the commission any power to review its determinations, once they are made, * * *. * * * [T]he commission had no power to recall the case for review after issuance of its final order. Thus, it had no jurisdiction to withdraw its order and the order of withdrawal is of no force or effect."

The defendant is powerless to adjudicate the issues once formally determined by it, either by means of a rehearing or under the guise of a "supervisory order."[5] The defendant's use of the supervisory power in this instance was not "according to law" and it served improperly to oust the jurisdiction of this court. What

---

[5] However, the court does not deem this rule to prohibit the issuance of an amendment to a formal order, as has been done from time to time, for the purpose of correcting a patent error in description, amount, names, and the like, made necessary by prior error, oversight or insufficient information.

[ 373 ]

it could not do by a rehearing cannot be done under the yet-to-be defined supervisory power.

Whether the plea of estoppel was properly denied by defendant in the first instance was not submitted to this court.

The defendant's Order No. VL 76-673 is set aside and held for naught. The defendant's Order No. VL 76-362 was the legal judgment of the defendant and must be obeyed by the plaintiff and the intervenor.

Each party shall bear its own costs.