Argued and submitted February 22, affirmed April 17, 1991

Senator Shirley GOLD,
*Petitioner,*

*v.*

SECRETARY OF STATE
Barbara Roberts,
*Respondent.*

(CA A66553)

809 P2d 1334

Don S. Willner, Portland, argued the cause for petitioner. With him on the briefs were Rebecca E. Swanson, Portland, and Willner & Associates, Portland.

Richard D. Wasserman, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Joseph, Chief Judge,* and Deits, Judge.

JOSEPH, C. J.

---

* Joseph, C. J., *vice* Newman, J.

## JOSEPH, C. J.

Petitioner seeks review of a final order of the Secretary of State (Secretary) issued after an administrative hearing. The order imposed penalties totalling $28,555 against petitioner personally for violations of ORS 260.083. We affirm.

The Secretary found:

"1.   From 1985 until February 9, 1989 Senator (then Representative) Shirley Gold was the treasurer of [the House Democratic Caucus (HDC)], a political committee.

"2.   For the general election on November 8, 1988 Senator Gold, as HDC treasurer, was required to file with the Secretary a first and second preelection statement, and a post-election statement, of contributions received and expenditures made (C & E statements) by or on behalf of HDC. The statements were due on October 10, November 3 and December 8, 1988 respectively. See ORS 260.073(1). Senator Gold filed the C & E statements.

"3.   The Secretary's staff initially examines those C & E statements which are timely filed to determine whether all of the boxes are filled in and the amounts on the pages are added correctly. If a C & E statement is insufficient a letter is sent to the filer offering an opportunity to submit an amended statement with the missing information. If the amended statement is insufficient, the Secretary proposes a penalty in accordance with applicable statutes and a penalty matrix she has developed.

"4.   The Secretary notified Senator Gold on November 1, 1988 that there were insufficiencies in HDC's first preelection C & E statement. HDC then filed an amended statement, and the Secretary notified Senator Gold on November 15, 1988 that there were insufficiencies in the amended statement.

"5.   The Secretary also informed Senator Gold on November 15 that HDC's first preelection C & E statement had omitted four names and addresses of employers and 'three detailed purposes of reported expenditures.' The Secretary therefore proposed to impose a civil penalty of $35. Exhibit 15. The penalty was paid with a check from HDC dated December 5, 1988 and signed by Carl Wiederaenders. Thereafter Larry Bevens, Elections Manager, wrote to Senator Gold to acknowledge receipt of the $35 penalty 'imposed in the matter of your committee's insufficient filing of a First Pre-Election Statement of Contributions and Expenditures for

the General Election of November 8, 1988.' Mr. Bevens concluded, 'This matter is now considered closed.' Exhibit D.

"6.   Nothing in the penalty notice, Exhibit 15, nor in Mr. Bevens' letter indicated that upon accepting the $35 penalty payment the Secretary would relinquish her authority to investigate, and impose penalties for, other insufficiencies in the first pre-election C & E statement.

"7.   On or about November 14, 1988 the Secretary notified Senator Gold that HDC had failed to file a sufficient second preelection statement. On or about November 29, 1988 the Secretary notified Senator Gold that HDC had failed to file a sufficient amended second preelection statement. On or about December 14, 1988 the Secretary notified Senator Gold that HDC had failed to file a sufficient post-election statement.

"8.   The notices issued by the Secretary on or about November 1, 14 and 29, 1988 all stated, 'Pursuant to ORS 260.205 we have examined the following Statement(s) of Contributions and Expenditures.' See Exhibits 15 - 17. All of the 1988 notices referred to omissions which were minor in comparison with the extent of the omissions discovered in 1989.

"9.   In September 1989 an HDC staff member was alleged to have removed a page of HDC's 1988 second preelection C & E statement from the Secretary's files. Also HDC filed another amendment to its 1988 post-election C & E statement. There was a general increase in news coverage of discrepancies in the accounts reported by HDC. In response to these developments the Secretary, pursuant to ORS 260.345(8) and 246.110, instructed her Audits Division to conduct a detailed audit of the HDC books. At that time the House Majority Leader agreed to provide the auditors with all documents he had relating to HDC's finances, including canceled checks. The Secretary also received bank statements and other records of financial transactions HDC had conducted with banks. Some of the information about HDC's finances which the Secretary received in and after September 1989 had not previously been available to her.

"10.   Using the comprehensive information revealed in the 1989 investigation the Secretary uncovered contributions and expenditures totalling over $80,000 which were not recorded on HDC's 1988 C & E statements. Some, but not all, of the omissions discovered in Fall 1988 might have been identified by cross-checking HDC's C & E statements against all of the other C & E statements submitted (by entities other than HDC) for the 1988 general election. The Secretary does

not, however, perform such cross-checks routinely and it would be impractical for her to do so. The Secretary eventually determined that as of October 27, 1989 HDC had filed sufficient C & E statements for the November 1988 general election.

"11.    The Secretary's investigation of HDC's C & E statements was initially announced at a press conference on or about September 26, 1989. At that time Senator Gold was no longer HDC treasurer and the Secretary had no duty to notify her of the investigation. On December 5, 1989 the Secretary sent a formal notice of the investigation to Senator Gold for the first time. Previously Patricia McCaig, the Secretary's Executive Assistant, had informally notified Senator Gold of the investigation.

"12.    The Secretary distinguishes between an insufficient C & E statement, in which records of transactions are incomplete, and a late statement, which is not received by the filing deadline. The Secretary treated the omitted information as late because it pertained to transactions not reported at all (rather than reported incompletely) on the statements. Senator Gold did not object.

"13.    The maximum penalty which the Secretary can levy for a late or insufficient C & E statement, as established by the Legislature, see ORS 260.232(6), is determined by the formula:

5% multiplied by the total contributions or expenditures, whichever is greater, multiplied by the number of days the sufficient statement, or omitted information, is late (maximum penalty = 5% × total contributions or expenditures × days late).

The Secretary's penalty matrix is used to calculate the penalties which will be imposed in individual cases. In cases which meet the guidelines in the matrix, the Secretary will impose a penalty lower than the potential maximum.

"14.    In establishing the penalty in this case the Secretary modified each of the three multipliers used to determine the penalty amount. Each modification had the effect of reducing Senator Gold's potential liability. For the first and second violations by a political committee treasurer, a 1% and 3% factor are used rather than the 5% factor, which is used in the third and subsequent violations. The Secretary elected to treat each inadequate filing at issue here as a first violation by Senator Gold, and applied a one percent penalty in each case.

Second, instead of basing the penalty for each statement on

the greater of the total contributions received or expenditures made by HDC in the reporting period, the Secretary based each penalty on the total omissions in the applicable statement. Finally, the Secretary limited to 180 the number of days a penalty would accrue.

"15.    On December 5, 1989 the Secretary notified Senator Gold that she proposed to impose a penalty for each late statement of one percent of the amount of the total omissions in that statement multiplied by 180 days.

"16.    The maximum penalty in the penalty matrix for a late statement is $10,000. Accordingly, the Secretary proposed penalties of $10,000 for the first preelection and post-election statements and $8,555 for the second preelection statement. The total proposed penalty is $28,555. The calculations used to establish these penalties were not contested by Senator Gold. By strictly following the statutory formula, see ORS 260.232(6), the Secretary could have assessed a penalty of over one million dollars. See Secretary's Pre-Hearing Brief 16.

"17.    There are no mitigating circumstances which should result in further reducing the penalty.

"18.    In response to the notice of penalty assessment Senator Gold requested this hearing.

"19.    Although in previous final orders the Secretary has assessed penalties against political committees for C & E statement filing violations, the Secretary actually holds 'the treasurer of record for the individual committee for the reporting period' liable for payment of the penalty. See Exhibit B, p 2. Thus, for example, the Secretary has attempted to collect the penalty assessed against the No Special Rights Committee (Final Order April 19, 1989) by placing a lien on the property of that committee's treasurer."

The Secretary concluded that petitioner was required, and failed, to file first and second pre-election C & E statements and the post-election C & E statement, reporting all contributions received and expenditures made by HDC for the 1988 general election. She further concluded that petitioner is responsible for payment of the penalty as a result of her failure, as HDC treasurer, to file the statements. The Secretary found no mitigating circumstances that would cause her to reduce the penalty.

Petitioner's two assignments of error challenge the Secretary's interpretation and application of the governing

statutes. We review only to determine whether "the agency has erroneously interpreted a provision of law and * * * a correct interpretation compels a particular action[.]" ORS 183.482(8)(a).

Petitioner asserts that the Secretary erred in imposing a civil penalty under ORS 260.232 for insufficiencies in the C & E statements because her investigation, which began in September, 1989, was untimely. She argues both that the Secretary failed to examine the statements within the 90-day period after their filings, as mandated by ORS 260.215, and that the 1989 investigation was that examination. Petitioner is wrong on both counts. She fails to recognize the Secretary's separate and distinct duties to inspect the statements, ORS 260.205, and to examine them, ORS 260.215, and her authority and duty to investigate election law violations. ORS 246.110; ORS 260.345.

■  The reporting statutes require the Secretary or other filing officer to *inspect* a C & E statement within 10 days after its filing, ORS 260.205(1), and to *examine* it beginning not later than the third month after the date of an election. ORS 260.215(1). Petitioner concedes that the Secretary *inspected* the statements within 10 days but asserts that her *examination* began after the three-month deadline had passed. ORS chapter 260 does not define "inspect" or "examine." Because the Secretary must inspect statements within 10 days but has three months to begin to examine them, it is a fair inference that the legislature intended examination to be different from and more exhaustive than inspection. In her order, the Secretary explained that she has elected to perform an examination as the initial review. Rather than merely check the statements to be certain that all the boxes are filled in, her staff checks the figures on each statement to determine whether they are arithmetically correct as well. She thereby substitutes, in whole or in part, the later, more comprehensive review for the earlier, less comprehensive one. The Secretary examined the C & E statements and sent notices of insufficiencies on November 1, November 14 and November 29, 1988, well within the three-month period. There was no legal insufficiency in that.

■  The Secretary conducted her subsequent *investigation* of the C & E statements under a separate statutory authority. ORS 260.345(8) provides:

> "A filing officer having reason to believe that a violation of the election laws has occurred shall proceed promptly as though the officer had received a complaint."

Petitioner argues that ORS 260.345 does not cover violations of the C & E reporting requirements, because a series of other statutes, ORS 260.200 *et seq,* deals specifically with those requirements. The term "the election laws" is not further defined, but its plain meaning encompasses violations of *all* laws pertaining to elections, including campaign finance reporting violations. The Secretary's authority under ORS 260.345(8) embraces violations of the C & E reporting laws.

■ Under the principle that the specific sometimes controls the general, however, the specifics of ORS 260.200 *et seq* could limit the application of the more general laws in respect to C & E report violations whenever the two sets of laws are inconsistent or otherwise conflict. Petitioner asserts that the three-month period in ORS 260.215(1) for beginning an examination limits the Secretary's power to investigate C & E report violations under ORS 260.345(8), which is not time-limited by its own terms.

The time limitation in ORS 260.215(1) applies to the examination of the report form, a process that the Secretary described as making sure that all boxes are filled in and that the figures on the form are arithmetically correct. Nothing in the language of any of the statutory provisions indicates that the time limit for examining C & E statements has the effect of limiting investigation of violations, particularly given that violations may well not be apparent on the face of the reports, as was the situation here. The Secretary's investigation was not untimely, and she did not err in imposing a civil penalty for insufficiencies in C & E statements discovered in her investigation.

■ Petitioner also assigns as error that the Secretary imposed a civil penalty on her personally. She argues that she cannot be held personally liable for the penalty for three reasons. First, she contends that ORS 260.073 requires the political committee, not the treasurer personally, to file a statement. The plain language of ORS 260.073(3) contradicts that assertion. It provides, in part:

> "The statement, supplement and each duplicate copy shall be

signed and certified as true by the *treasurer required to file it.*" (Emphasis supplied.)

Second, she argues that, because of a contrast in language between ORS 260.035 and 260.037, we should infer from the statutory scheme that the legislature intended not to hold treasurers personally responsible, except in one limited circumstance. ORS 260.035 applies to treasurers of political committees in general; it requires that every political committee have a treasurer and that contributions be received and expenditures made through that treasurer. It does not mention a treasurer's personal liability for C & E reporting violations. ORS 260.037 applies specifically to treasurers for candidates; it describes a treasurer's duties and provides, in part:

"The candidate, in addition to the treasurer, shall be personally responsible for the performance of such duties and any default or violation by the treasurer shall be conclusively considered a default or violation by the candidate."

Petitioner relies on the maxim of construction that, when the legislature includes a provision in one statute but omits it in another, the omission is deliberate and meaningful. *See Cabell et al. v. Cottage Grove et al.,* 170 Or 256, 281, 130 P2d 1013 (1943). The maxim is, of course, just an aid to construction; it is not a rule of law. It can be used only when the legislative language is not clear. Moreover, it does not apply if there is a special reason for mentioning one thing and none for mentioning another in the statute. *See* 2A Sutherland, *Stat. Construction* § 47.23 (Sands 4th ed 1984) (*quoting Johnson v. General Motors Corp.,* 199 Kan 720, 433 P2d 585 (1967)).

The legislature has provided for personal liability on the part of treasurers elsewhere in the statutes dealing with C & E reporting requirements, and its intent is not unclear. ORS 260.232(2) imposes a penalty on the person required to file C & E statements:

"If a person required to file has not filed a statement or certificate complying with applicable provisions of ORS 260.058 to 260.156 within the time specified in ORS 260.058, 260.063, 260.068, 260.073, 260.078 or 260.118, the Secretary of State by certified mail shall notify the person that a penalty may be imposed and that the person has seven days to request a hearing before the Secretary of State."

As noted above, the "person required to file" is the treasurer. ORS 260.073(3). Because ORS 260.035 is not the source of treasurers' liability, there was no reason to mention it there. The exceptional case is the *candidate's* liability, which is created by ORS 260.037: "The candidate, *in addition to the treasurer,* shall be personally responsible for the performance of such duties * * *." (Emphasis supplied.) The emphasized phrase recognizes the ordinary state of affairs: A treasurer, as the person required to make a filing, is presumably liable for defaults or violations. Petitioner's "express inclusion, implied exclusion" argument does not work here.

Third, petitioner argues that it is contrary to past practice for the Secretary to impose a civil penalty on a treasurer personally for C & E reporting deficiencies. Our review is limited to the agency's interpretation of law in the case before us. ORS 183.482(8)(a). The law provides for imposition of penalties on a treasurer personally. The Secretary interpreted the law properly. The record does not show an inconsistent past practice. The Secretary did not err in imposing penalties on petitioner.

Affirmed.